## GALVESTON, HOUSTON & SAN ANTONIO Ry. v. H. C. DREW.

SUPREME COURT, GALVESTON TERM, 1883.

*Railroad—Injury to Servant—Defective Machinery.*—The master is not responsible for an injury to an employee which resulted from the use of defective machinery, of which the employee had full notice, as well as of the danger consequent upon its use, when the employee is directed to use it, and simply protests against the service, and yet performs it.

Appeal from Harris county.   Opinion by Stayton, J.

The record shows that the appellee was engaged as fireman on a locomotive which had for some time, without a pilot or cow-catcher, been used with a construction train.

On the 18th of March, 1882, the superintendent of the railway, and also the train dispatcher, directed the engine to be taken from Eagle Pass Junction, where it then was, to San Antonio, that a pilot might be put on it.

The engine had been in use about ten days without a pilot, during which time the appellee was engaged with it.

Upon cross-examination the appellee testified as follows :

"Previous to being sent to San Antonio I had run on the engine on the day and night, but in the day-time mostly. We were to go there Saturday night, or the next Saturday night. We had strict orders from the master mechanic and the superintendent at the same time. We protested that it was dangerous to go at night time, and he said if we did not go, he would find some one that would go, Anybody with common sense could have seen the danger. What he said meant, we had to go or he would find some one who would go." He further stated that he understood by the language used by the superintendent that he would be discharged if he did not go with the engine to San Antonio.

The engine had left San Antonio, without a pilot, about ten days before it was ordered to the shop for repairs, but it does not appear that either the engineer, or the plaintiff knew for what purpose the engine was ordered to San Antonio.

On the way from Eagle Pass Junction to San Antonio the engine ran against a steer and was thrown from the track, and the appelle was thereby seriously injured. He stated that if there had been a pilot on the engine it would have thrown the steer from the track. The cause was tried without a jury, and a judgment was rendered for the appellee for $1200.

The case presents the single question as to whether or not a master is responsible for an injury to an employee that resulted from the use of defective machinery, of which the employee had full notice, as well as of the danger consequent upon its use, when the employee is directed to use it and simply protests against the service, and yet performs it.

There is no question in this case but that the appellee knew of the defect in the engine which he had been assisting to operate, without a pilot, in the night, as well as during the day, and that he knew of the danger incident to operating the defective engine.

The general rule is that one who enters into employment which is attended with risk of injury, of which such employee has notice, or by reasonable care may have notice, cannot recover compensation from the master, if by exposure to such risk he is injured.

And this rule applies to cases where injury is received from the use of defective implements, or machinery, of which the servant had notice. (Wharton's Law of Negligence, 200, 214.)

It has been held that there are exceptions to this rule, and the exception which is claimed in this case is applicable as thus referred to by Mr. Wharton : ''In this country the exception has still further been extended, and we have gone so far as to hold that a servant does not, by remaining in his master's employ, with knowledge of defects in machinery he is obliged to use, assume the risks attendant on the use of such machinery, if he has notified the employer of such defects, or protested against them, in such way as to induce a confidence that they will be remedied.'' (Law of Negligence, 221.)

This exception from the rule, we are of the opinion, can only be recognized in cases where the employee has reason to expect that in consequence of his notification to the employer of the defect, it will be repaired before the employee will be subjected to danger from it, and this upon the theory that as it is the duty of the master to furnish suitable and safe implements and machinery to be used by his servants, he will do so, when notified that which is in use is defective, or in cases where the servant makes known the defect to the master, and the master gives assurance that it will be remedied in a reasonable time, for by such assurance an implied request to the servant to remain in the service, and an assumption of the risk by the master in the meantime may be implied.

Speaking upon this subject, an accurate elementary writer says : ''It is also negligence for which the master may be held responsible, if knowing of any peril which is

known to the servant also, he fails to remove it in accordance with assurances made by him that he will do so. This case may also be planted on contract, but it is by no means essential to do so. If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequences of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless, or until, he makes his assurance good. Moreover, the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume its risks. So far as the particular peril is concerned, the implication of law is rebutted by the giving and acceptance of the assurance, for nothing is plainer, or more reasonable, than that parties may and should, when practicable, come to an understanding between themselves regarding matters of this nature." (Cooly on Torts, 559.)

In the case now before us there was no promise express or implied, that the defect in the engine would be repaired before, by its use, the servant would be exposed to danger resulting from the known defect, nor was there any assurance that such repairs would ever be made, for it appears that the servant was ignorant of the purpose for which the engine was directed to be taken to San Antonio.

Where a servant, knowing machinery which he is operating to be so defective as to render its use dangerous, simply protests against its use, and after protest, having received no assurance that the defect will be remedied, continues to use it, we believe the true rule to be that the servant assumes the risk incident to the use of such machinery, for his remaining in the service is voluntary.

Protest against, or objection to a service rendered dangerous by defective machinery, if the party making the protest or objection is under no legal obligation to remain in the service, can not render the service subsequently performed involuntary.

There is a disparity, in the relation of master and servant, but no such as can make the act of the servant in remaining in a service which he knows to be peculiarily dangerous from defective machinery, an involuntary act in legal contemplation.

These views, in connection with the uncontroverted fact

that the appellee knew of the defect from which he alleges the injury resulted, preclude a recovery by him.

There is another view of the case, however, which it is proper to notice. The appellee states that if there had been a pilot on the engine, it would have thrown the steer from the track. This is a mere opinion, from which the inference is sought to be drawn that injury would not have occurred if the engine had not been defective. This does not necessarily follow, and it would be a question of fact, whether, if the engine had been perfect, it was not an act of negligence on the part of the engineer to come in contact with the steer. If negligence with a perfect engine, the negligence would be greater when the engine had a defect which would augment the danger of such a contract.

If this was negligence, it was the negligence of a servant in the common employment, and if the injury resulted therefrom, would preclude a recovery.

This cause having been tried without a jury, and the evidence of the plaintiff himself, showing a state of facts, which, without reference to the question, whether the injury was caused by the negligence of a co-employee or not, precludes a recovery by him, the judgment of the district court will be reversed, and such judgment here rendered as ought to have been rendered by the court below, which will be that the appellee take nothing by his suit, and that the appellant recover the costs of this court and of the court below, and it is accordingly so ordered. Reversed and rendered.

## MEDLINKA et al v. DOWNING et al.

SUPREME COURT, GALVESTON TERM, 1883.