GALVESTON, HARRISBURG & SAN ANTONIO RY. CO. v. W. A. GARRETT.

No. 2558.

1. **Employer and Employe—Duties of.**—It is the duty of a railway company if it uses engines with unusual couplings to explain to its employes any increased hazard from using them. An employe is warranted in acting under the assumption that the machinery furnished him is safe and adapted to the service in which it is to be employed. He assumes the risks ordinarily incident to his employment and such others only as he knows to exist or might have known by ordinary care.

2. **Same.**—A brakeman was injured in attempting to make a coupling between an engine in motion and a freight car; to the engine was attached an unusual coupling, more dangerous than those in ordinary use, which danger was not explained to the brakeman nor known to him. In such circumstances a verdict for damages in his favor is not disturbed.

3. **Conflict in Testimony.**—Where the testimony is conflicting a verdict will not ordinarily be set aside. That it is against the majority of witnesses testifying to the matter is not ground for reversal.

APPEAL from Harris. Tried below before Hon. James Masterson.

This is an appeal from a judgment for $3500 in favor of appellee for personal injuries suffered in the employment of the appellant.

The coupling apparatus attached to the locomotive, called a goose neck, is alleged to have been dangerous and unfit for use in coupling to freight cars, and was safe when used to couple to passenger cars. It is alleged that plaintiff was put to unusual hazard not ordinarily incident to his employment as a brakeman on account of the unsafe coupling apparatus, and while trying to perform his duty in making a coupling, without fault on his part he had his hand mashed.

Defendant answered not guilty, and the payment of $30 to plaintiff in full satisfaction of his claim for damages. Plaintiff replied that the $30 was a donation to him for time lost while in hospital in consequence of his injuries; that he understood he had only signed a receipt for the $30, and it was by fraud and artifice that the instrument of discharge was obtained from him; that he was told it was only such receipt; that he did not read it, but signed it as directed, believing it was such receipt.

It was proved that the plaintiff had been in the service of defendant company about seven months in the capacity of brakeman on freight trains at the time he was injured, on the 30th of March, 1885. He was injured—had three fingers of his right hand mashed off—while attempting to couple a box car on to a locomotive—more correctly, to the tender of the locomotive. The coupling apparatus attached to the tender had attached to it what was commonly called a goose neck, which is attached for use on passenger train locomotives, and served no purpose on freight train locomotives; it is intended to take up the slack on passenger cars, and on passenger cars works on a piece of iron which is not on freight cars. There is more danger of being hurt in coupling with the goose neck attachment than with the ordinary draw heads commonly used on

freight trains, and with the goose neck the coupling is made in a different way from the ordinary method. Plaintiff's evidence showed that the risk in coupling with the goose neck attachment was much greater than with the usual appliance on freight·engines; that it requires extra precaution to make the coupling with the goose neck, and the coupler has to be very careful or he will get his fingers caught in spite of all he can do. Defendant's evidence showed that it only required ordinary care to make such coupling, and that there was no special danger if the coupler attended to his business.

Plaintiff swore that he had never seen the apparatus on a freight engine before—on defendant's engines or any other in the freight train service; that the engines he worked with on defendant's road had the common draw head apparatus and no goose necks; that he had been using the common freight engine, and that this one was sent out of the round house, and he not knowing the change and not knowing it had the goose neck attachment undertook to make the coupling as usual, and putting his hand on the dead wood of the box car got his hand caught. Defendant's evidence showed that on the division of the road where plaintiff worked, between Houston and Glidden, there were in use while plaintiff was employed as many as three if not more of these McQueen engines, equipped with the goose neck and used to haul freight; and the evidence of defendant tended to show that plaintiff had used the goose neck, at least that he had opportunities to know that such engines were used for freight trains; also it was shown by the evidence of the fireman and engineer that before the accident occurred they told him about the goose neck and to be careful, and that the engineer backed the engine close to the box car and then got the fireman to take his place while he got off and went around and showed him how to make the coupling; and the engineer says he was standing alongside of him when he got hurt. Plaintiff testified that these statements are untrue.

Gilmer, for plaintiff, swore that he was employed on defendant's road during the time plaintiff was there and at the time he was hurt; that there were four or five of the McQueen engines on the division, sometimes only three; that it only required four or five engines to do the work, and thinks there were only two of the McQueen engines in use at any given time, and that two of them had the goose necks taken or broken off before the accident, but is not certain as to time.

It was in proof that the division had some of the usual freight train locomotives in use. It was also in proof that the McQueen engines, or engines equipped with the goose neck apparatus, were not exclusively used for passenger trains; that they were sometimes used on freight trains, though they were made for passenger trains.

*W. N. Shaw,* for appellant. — 1. Where the servant is employed in a

service where under the circumstances by lapse of time or if ordinarily observant he could have informed himself of the methods and appliances in use, his opportunity to know will be held as knowledge whether in fact he knew or not.   H. & T. C. Ry. Co. v. Fowler, 56 Texas, 560; G. H. & S. A. Ry. Co. v. Drew, 59 Texas, 12; Porter v. Hannibal, etc., R. R. Co., 71 Mo., 66; Tuttle v. Milwaukee Ry., 122 U.·S., 189; Pierce on Railroads, 379; 2 Thomp. on Neg., 1008, sec. 15; Wood's Mast. and Ser., 2 ed., sec. 365.

2.   The verdict and judgment are contrary to the weight of the testimony in this, that the testimony of the engineer and fireman, two of the three eye witnesses of the accident, shows that he was specially informed about the coupler immediately before the accident, and the testimony of the conductor, the remaining eye witness, shows that the accident occurred through the inadvertence or want of care on the part of plaintiff himself. Wormell v. Maine Cent. Ry. Co., Ry. and Corp. Law Jour., Aug. 13, 1887, p. 155; Darracattes v. C. & O. Ry. Co., Ry. and Corp. Law Jour., Aug. 20, 1887, p. 186.

*Goldthwaite & Ewing*, for appellee.—1.   If the "goose neck" on the engine rendered it not reasonably safe for the use to which put, and the defect was or might by ordinary care have been known to appellant, or if the goose neck exposed appellee to a danger not usual in freight service but incident to appellant's, of which appellant knew or ought to have known, and failed to fully warn appellee, then appellant negligently failed to perform its duty to appellee, and that it did so fail is abundantly shown by the evidence.   Mo. Pac. Ry. Co. v. Callbreath, 66 Texas, 526; Railroad v. Watts, 63 Texas, 549; 2 Thomp. on Neg., 976, sec. 6; Hawkins v. Johnson, 2 West. Rep., 290.   On duty to give warning of unusual risks.   1 S. W. Rep., 41; 3 Cent. Rep., 800.

2.   Especially is the employer bound to give warning when it has reason to suppose that the employe is without sufficient experience to encounter successfully the particular hazard.   Mo. Pac. Ry. Co. v. Watts, 64 Texas, 570.

3.   Appellee had the right to assume that appellant would not violate its legal duty to him, and if, acting on this assumption, he exercised such vigilance as an ordinarily prudent person would have done, in view of what he had a right to expect, negligent ignorance can not be imputed to him, and whether he did or did not exercise such vigilance was clearly · a question for the jury under all the circumstances.   Opportunity to know is not knowledge, unless the circumstances without conflict or ambiguity manifest negligent ignorance.

It is not contributory negligence not to anticipate that another will violate a legal duty.   Railroad v. Gray, 65 Texas, 32.

Negligent ignorance *vel non* was a question of fact, not of law.   In

addition to the numerous Texas cases, with which the court is familar, McDade v. Railroad, 3 Cent. Rep., 794; Hawkins v. Johnson, 2 West. Rep., 290.

A failure to see danger, if it was possible to see it, is not always contributory negligence. 56 Ind., 343; 50 Mo., 461; 32 Barb., 144; 4. N. Y., 349; 88 Ind., 381; 100 Mass., 52.

Appellee was not guilty of contributory negligence if he supposed the conditions remained as when he last knew of them and used care appropriate for such conditions. 6 Am. Rep., 188; Chicago & A. R. R. Co. v. Pondrom, 51 Ill., 333; 84 N. Y., 622.

The employe is held to take into account ordinary risks of his employment, not superadded dangers. 4 Met., 49; 30 Barb., 229; 5 Ohio St., 541.

Knowledge of habitual negligence of appellant, even if shown, is no defense unless appellee knew that the particular engine was dangerous. Shearm. & Redf. on Neg., sec. 98.

COLLARD, JUDGE.—There is an implied contract on the part of a railway company to furnish its employes reasonably safe and suitable machinery—not the best and most improved, but such as is reasonably safe and adapted to the work to be performed. It is bound to ordinary care in this respect. Beach on Con. Neg., secs. 124, 125.

If the company by negligence fail to furnish such machinery and appliances, by reason of which its employe in the discharge of his duty, ignorant of the defect and not chargeable with constructive notice of it and at the time exercising due care, is injured, the company would be liable. If the employe does not know of the defect and could not have ascertained it by ordinary care, and the company does know of it or is under the circumstances chargeable with such knowledge, it is required to warn the servant. Authorities at close of the opinion. The law is the same where there is any superadded risk not usual to the employment.

The plaintiff was a brakeman on freight trains of defendant, had been so six or seven months when he was injured while coupling a box car to a locomotive. He engaged to serve as a brakeman on a freight train. The locomotive in use at the time was intended for a passenger train, having a coupling apparatus with an attachment commonly called a "goose neck," which when used on freight trains was a useless attachment, and according to plaintiff's evidence was very dangerous to the employe in the act of coupling. Defendant had several of these locomotives equipped with this attachment on the division of the road where plaintiff was employed, and some without it, provided with the ordinary coupling apparatus used on freight train locomotives—some of defendant's witnesses testifying to as many as five, others to only three, and plaintiff's witnesses not more than two, with the "goose neck" appliance in operation at one time on the division. And it may be fairly

deduced from evidence offered by plaintiff that these appliances were broken off or taken off of all these engines but one, the one causing the accident, before plaintiff was hurt. Plaintiff himself swore that he had never before seen one of these appliances on defendant's freight train locomotives, was not informed and did not know they were in use, and while he was in the service had always worked with the ordinary locomotive furnished with the simple draw head coupling apparatus. It was in proof that the coupling with the "goose neck" appliance is not made in the same way it is without it.

Plaintiff testified that he had been working with the usual engine, and that this particular engine was sent out of the round house without warning, and he not knowing or expecting it had the "goose neck" attachment undertook to couple it to a box car in the usual way and so got hurt as alleged. The engineer in charge of the locomotive and the fireman both swore they warned him about the "goose neck," and the engineer swore that he moved the engine back within six inches of the box car and then got off of the engine and went around and showed him how to make the coupling. The conductor also testified to certain expressions of plaintiff immediately after he was hurt tending to show that he was not looking and attending to his business or exercising any care at the time he was hurt. Plaintiff in his testimony denies the statements of the fireman, engineer, and conductor. The jury, as was their privilege, believed the testimony of plaintiff. Under the evidence adduced by plaintiff we can not say the verdict of the jury is so clearly wrong as to authorize us to set it aside. There is evidence tending to show that defendant was negligent in using the McQueen engines in its train service, and in doing so without warning plaintiff of the increased hazard of his employment it violated its implied obligation to him. He was warranted in acting under the assumption that the machinery was safe and was adapted to the service in which it and he were employed. He had the right to expect that the machinery was safe and suitable. He assumed the risks ordinarily incident to such employment and such other only as he knew existed or might have known by ordinary care. G. H. & S. A. Ry. Co. v. Drew, 59 Texas, 10.

Plaintiff's evidence shows that there was unusual risk not common in such employment; that he was not warned of it, did not know it, and that he had been working the whole time of his employment with the ordinary train engine; from which the jury may have concluded that he was not chargeable with knowledge of the defect for the want of the exercise of ordinary care; it was also clear that defendant did know of the dangerous character of these engines. All these questions were submitted to the jury by clear and appropriate charges, the law of the case, and the verdict was for plaintiff, and we do not think it ought to be set aside.

There were more witnesses against than for plaintiff's case on the vital

point of his knowledge of the defect in the coupling apparatus, and there was a serious conflict in the evidence as to plaintiff's opportunities and means of information, by which it was attempted to show on defendant's side that plaintiff had constructive notice of the condition of the engine, that he ought to have known it, and could have done so by the exercise of reasonable care; but the jury solved all these conflicts in favor of plaintiff, accepting his testimony and rejecting that of defendant.

The law of the case was correctly given in the charge of the court, and we are of opinion the judgment of the court below should be affirmed. See Mo. Pac. Ry. Co. v. Somers, 71 Texas, 700; Mo. Pac. Ry. Co. v. Callbreath, *supra;* H. & T. C. Ry. v. Fowler, 56 Texas, 452; Ry. Co. v. Hester, 64 Id., 401; Shearm. & Redf. on Neg., secs. 92, 93, 94, 95, 96, 97; Beach on Cont. Neg., secs. 135, 136, 137, *et seq.,* including 140..

*Affirmed.*

Adopted March 12, 1889.