Louisiana Extension Railway Company v. Alice Carstens et al.

Delivered June 10, 1898.

**1. Charge of Court—Substantive Defense.**

A party is entitled to have a substantive defense, properly pleaded and in support of which evidence is offered, submitted to the jury in an affirmative form.

**2. Master and Servant—Negligence—Orders and Obvious Risk.**

A brakeman who, by orders of his superior, went between cars to make a coupling upon a promise that the train which backed down would be stopped in time to prevent accident to him, is entitled to recover for an injury sustained by reason of the superior's failure to keep such promise, although the risk was obvious.

**3. Same—Same.**

One ordered by his superior to make a car coupling, under such circumstances that the danger was great and apparent, although induced to act by a promise that the car should be stopped in time to avoid accident to him, can not recover for an injury sustained, if ordinary prudence would have dictated a refusal, or if he was recalled from his post, so that by ordinary care he would have escaped harm; but if the order to come out was delayed until the danger was so imminent as to deprive him of capacity to act with circumspection, he may recover.

**4. Same—Fellow Servants—Concurring Negligence.**

A railroad company is not liable for injuries sustained by a brakeman ordered by his superior to make a coupling, if the accident was occasioned by the negligence of his fellow servants, the engineer or fireman, in failing to heed signals, but if their negligence concurred with that of the superior who had promised to stop the car in time to avoid harm to the brakeman, then the company is liable.

**5. Master and Servant—Reliance on Promise.**

A brakeman induced to make a coupling by the promise of his superior to stop the car in time to avoid injury to him is justified in relying upon such promise until it becomes apparent that the superior will fail to perform his duty; and his right to recover for an injury sustained depends upon whether he could by the exercise of ordinary prudence, have thereafter extricated himself from danger.

**6. Charge Confined to Facts at Issue.**

A charge on the assumption of ordinary risks and as to the effect of knowledge on the part of an employe of danger is properly refused as misleading in an action by a widow to recover damages for the death of her husband alleged to have been

caused by the negligence of a division superintendent and conductor of a railroad company while the deceased, under their immediate directions, was making a coupling.

**7. Same—Gross Negligence—Exemplary Damages.**

A charge upon gross negligence is misleading and improper, in an action by a widow to recover for the death of her husband, alleged to have been caused by the negligence of a superior while the deceased, under his direction, was engaged in coupling cars, where exemplary damages are not sought.

**8. Same—Abstractions.**

An abstract charge, that "the acts or omissions or negligence of their agents, servants, or employes are the acts of corporations," should not be given.

**9. Same.**

A charge which embodies general rules as to the duty of railway companies to exercise proper care in operating their cars and trains, where they are inapplicable to the facts of the case, should not be given.

**10. Same—Defective Machinery.**

In an action to recover for the death of a brakeman, alleged to have been caused by the negligence of his superiors while he, under their immediate directions, was making a coupling, a charge upon the law appertaining to cases where an employe seeks to recover because of defective machinery, and as to the effect of his knowledge or means of knowledge, is inapplicable, even though there may have been a defect in the drawhead or coupling apparatus of the cars.

**11. Damages, Measure of—Earnings.**

The measure of damages recoverable by a widow whose husband was killed in his employment as a brakeman, is not what his earnings would have been, but such a sum as would compensate the plaintiff for the loss of the pecuniary benefits she would have received from the husband had he not been killed.

**12. Statement of Facts—Costs.**

A statement of facts will not be stricken out, although more voluminous than necessary, where its bulk has not delayed a decision of the case, but its cost will be adjudged against the appellant, although the judgment appealed from is reversed.

APPEAL from Orange. Tried below before Hon. STEPHEN P. WEST.

*Baker, Botts, Baker & Lovett, Votaw, Martin & Chester,* and *C. A. Teagle,* for appellant.

*Holland & Link, A. C. Allen, Edgar Watkins,* and *Frank C. Jones,* for appellees.

WILLIAMS, ASSOCIATE JUSTICE.—This was an action by the widow and child of William F. Carstens to recover damages for his death, which occurred October 18, 1896, while Carstens was in the employ of appellant as brakeman, and is alleged to have been caused by the negligence of two employes of appellants, a division superintendent and a conductor, both of whom had command, control, and superintendence of Carstens. Verdict and judgment were rendered for plaintiffs for $7128, from which this appeal is prosecuted.

Carstens was a brakeman in the crew of a wrecking train composed of engineer, fireman, and another brakeman under the control of a conductor named Barbisch. On the occasion under consideration the super-

intendent, W. B. Mulvey, was also present, directing the work and exercising general control. The crew were engaged in removing from the track a car which had been wrecked. This was to be done by fastening the disabled car to a flat car at the rear end of the wrecking train and pulling the former away. As the drawhead of the former car had been broken away it was necessary to fasten a chain first to some of the fixtures underneath it, and then to the drawhead of the flat car. The chain having been thus fastened to the wrecked car, the wrecking train, which was standing some distance away, was backed in obedience to a signal from Barbisch or Mulvey, or both, and caught Carstens, who stood between the two cars, and killed him, the absence of the drawhead from the wrecked car allowing the two to come close together. The plaintiffs, by their pleadings and evidence, claim that, before the train was backed, or as it was being backed, both Barbisch and Mulvey ordered Carstens to go between the cars for the purpose of fastening the chain to the drawhead of the flat car, and upon his protesting that it was dangerous, peremptorily ordered him in, and at the same time assured him that they would have the train stopped in time to prevent injury to him. There is evidence that the chain was long enough to permit the coupling to be made while the cars were five feet apart. There is evidence also that if the signal to stop had been given in time to the engineer he could have stopped the flat car close enough to the other to allow the coupling to be made, and at the same time to leave a space of three or four feet between the cars. Carstens was out of sight of the engineer, who acted wholly upon signals from the conductor standing beside the track.

. The defendants, on the other hand, claimed and offered evidence tending to show that neither Barbisch nor Mulvey, nor anyone else, gave the order or made the promise alleged by plaintiffs, but that Carstens went between the cars against their orders and remained between them, notwithstanding their remonstrances and orders to get out. There is an irreconcilable conflict of evidence on this point. Some of the testimony tends to show that as the cars were moving back both Mulvey and Barbisch ordered Carstens to come out, and that this was done in time to have enabled him, had he obeyed, to have escaped. Upon this point also the evidence conflicts.

Upon this state of the evidence the appellants requested the following special charge, which was refused:

"Although you may believe from the evidence that the conductor, J. W. Barbisch, or W. B. Mulvey ordered Will F. Carstens to go between the cars and make the coupling, and that they, or either of them, assured him that they would have the train stopped before it could or would hurt him, and that they, or either of them, told him afterwards, in time for him to have avoided the danger, to get out from between the cars, then the plaintiffs can not recover, and you will find for the defendants."

While the charge of the court contained general instructions upon contributory negligence, it gave no rule applicable to the state of facts supposed in the requested instruction. If those facts existed they constituted

a complete defense. The defendants had pleaded them and offered evidence tending to establish them, and had the right to have the question submitted affirmatively. The requested charge was not upon the weight of evidence, nor was it objectionable as selecting and laying stress upon particular parts of the testimony. It sought simply to procure the submission of a substantive defense. To a complete submission of this issue, some further explanation would have been proper, as will be indicated further on, but the charge requested was sufficient to call the court's attention to the point and require its submission.

Another charge requested sought to have the jury instructed that the engineer and fireman were fellow servants of Carstens, and that if his death was caused by their negligence, plaintiffs could not recover. The defendants pleaded this defense, and if there was evidence tending to establish it, they were entitled to have an affirmative submission of it. The conductor, in one part of his testimony, says he gave the signal to stop in time to have enabled those on the engine, had they heeded it, to have stopped before injuring Carstens. The signal had to be received by the fireman and by him repeated to the engineer. This was enough to require the court to leave the question to the jury. The charge requested, however, needed a qualification which will be stated below.

The charges requested, stating the rules applicable in cases where an employe seeks to recover because of defective machinery, and as to the effect of his knowledge, or means of knowledge, of the defects, had no application to the case. Others, on the subject of assumption of ordinary risks and as to the effect of knowledge on the part of deceased of the danger, did not state the issues upon which a proper decision of the case depended, so as to aid the jury in coming to a verdict, and hence were calculated to mislead. We can make our views plain by stating the rules upon which the decision of the case must depend.

The right of plaintiffs to recover must depend upon proof of the facts alleged by them as constituting the negligence, that is, that Carstens' superior ordered him between the cars to make the coupling, and undertook to have the car stopped in time to prevent injury to him. The danger to be incurred was open to his observation and was as well known to him as to the conductor and superintendent, and if, against orders, or without the order or assurance of protection, he entered between the cars, he thereby took upon himself the risks resulting. But it does not follow that he assumed the risk, or was guilty of negligence, if he acted upon the order of his superiors, coupled with an assurance of protection, or upon such orders as implied such an assurance. The case is not like that of Railway v. Drew, 59 Texas, 10, and others of that class, where an employe uses machinery known to him to be dangerous in obedience to orders of the master. By so doing he incurs a risk while he is using the defective instrument which is at the time beyond the master's control. Here the evidence tends to show that it was in the power of the master, while requiring the servant to perform the particular service, to afford

him protection against the danger arising from it. Consequently it should not be held as matter of law that, in obeying an order accompanied by such an assurance, or of such a nature as to carry with it an implication that protection would be given, the servant assumes the risk or is guilty of contributory negligence.

If, therefore, it should be found that the danger to be incurred by Carstens in taking his station was such that his superiors, by the use of such care as men of ordinary prudence would employ in like situations, could protect him against it by causing the train to be stopped, and that either of such superiors ordered him to take such station, in such way and under such circumstances as to reasonably justify Carstens in believing that such protection would be given, and if such superiors failed to use such care as is just defined, to cause the train to be stopped in time to save Carstens from injury, and as a result of such want of care he was killed, defendants would be liable, unless, notwithstanding such order and promise, the danger to be incurred by Carstens was so great and apparent that a person of ordinary prudence, acting in his situation, would not have exposed himself to it; or unless, after having thus induced him to go in, one or both of his superiors ordered him to come out at such time and under such circumstances that, with ordinary care, he could have escaped. If, however, the order to come out, if given at all, was given when his danger was so imminent as to deprive him of the capacity to act with that circumspection that ordinarily guides the conduct of men of ordinary prudence, and if this danger had been brought upon him by the negligence of the superior who had assumed the duty of stopping the trains, if such duty had been assumed, in failing to use proper care to stop it, then the fact that under such circumstances Carstens did not act prudently, if it be a fact, would not preclude recovery. Railway v. Neff, 87 Texas, 303; Railway v. Watkins, 88 Texas, 26.

If the superior who gave the assurance of protection as above specified, if one was given, did all that was incumbent on him to stop the train, and its failure to stop was not caused or contributed to by any failure on his part to exercise ordinary care, then there could be no recovery. If the coming together of the cars resulted from negligence of the engineer and fireman, or either of them, in failing to heed signals, and was not contributed to by negligence of Carstens' superior in failing to do what he should have done to have the train stopped, defendants are not liable. But if the engineer and fireman were guilty of negligence which helped to cause Carstens' death, and the superior was also guilty of negligence, without which such death would not have occurred, so that the negligence of both concurred in producing the result, then defendants would be liable.

A special charge was asked by defendants submitting the proposition that if Carstens, though ordered in with assurance of protection and not ordered out by his superiors, discovered or should have discovered the danger from the approaching train in time to have gotten out, this would prevent a recovery. The proposition is substantially true in theory, but we

discover nothing in the evidence presented in the briefs to make it applicable. If the circumstances justified him in going in, relying on the duty assumed by the superior of stopping the train, he could continue to rely upon it until it became or should have been apparent to him that the superior would not perform such duty. But if it so became apparent in time for him to act with ordinary prudence, and to get out with ordinary diligence, plaintiffs could not recover. As we have said, we do not see that the evidence raises this question, but if it should do so upon another trial, of course proper instructions should be given concerning it.

Complaint is made of the instruction in the charge that "the acts or omissions or negligence of their agents, servants, or employes are the acts of corporations." It was probably harmless, but it is a pure abstraction which might properly be admitted. A charge should be directed to the particular facts upon which the case depends. No other portions of the charge are assigned as error, but we deem it proper, in view of another trial, to notice some other instructions, the repetition of which might occasion trouble.

It is not necessary that plaintiffs, in order to recover, should show that the conductor or superintendent was guilty of gross negligence, or that, to defeat the action on the ground of contributory negligence on the part of Carstens, if such there was, it should have been gross. Ordinary negligence would be sufficient for either purpose.

As no recovery of exemplary damages is sought, no definition of or allusion to gross negligence is proper, since it would only serve to complicate the subject and possibly to confuse the minds of jurors. General rules are also given as to the duty of railroad companies to exercise proper care in operating their cars and trains, which are entirely inapplicable to the case. We have endeavored to state the questions upon which the submission should be made. The part of the charge just referred to should be omitted. The duties of both parties arose out of the particular facts existing at the time of the transaction in question, and have already been indicated, and the instructions should be directed to these.

In one part of the charge allusion is made to the earnings of Carstens, as if they constituted the measure of damages. This may be corrected in another part of the charge, but it is likely to produce an incorrect impression on the jury. The recovery is not, of course, to be equal to what the earnings would have been, but is to be a sum which will compensate plaintiffs for the loss of the pecuniary benefits they would have received from Carstens had he not been killed.

A motion has been made to strike out the statement of facts, on the ground that it was not made out in accordance with the rules. It is made to appear that the parties failed to agree, and that the statement in the record is that which appellant presented to the presiding judge. It is far more voluminous than there is any necessity for it to be, as is apparent from the comparatively small space in which the parties in their briefs have stated all the facts considered material. The facts having been so condensed in the presentation of the case that the failure to comply

with the rules in making the statement has not delayed a decision, we do not think it proper to strike out the statement. But as its unnecessary length is attributable to the fault of appellant, which has caused unnecessary expense in copying it into the record, we think appellant should be charged with such expense. While the judgment is reversed at the cost of appellees, the cost of copying the statement in the transcript will be adjudged against appellant.

*Reversed and remanded.*