HOWARD WEBB v. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

Decided October 19, 1901.

**1.—Master and Servant—Assumed Risk.**

Where, in an action for personal injuries received in unloading ties from a moving train, the plaintiff, a section foreman, is shown to have been experienced in the work he was then doing, and in the manner of its performance, and fully comprehended the dangers and hazards involved, he must be held to have assumed the risks incidental to the business as it was being conducted, although he was acting at the time under the immediate direction of the division roadmaster.

**2.—Damages—Release Not Binding, When.**

An instruction that if, at the time plaintiff executed a release of his claim for damages, his injuries were in fact of a serious or permanent character, and that he had been led to believe by the company's surgeon that they were only slight, and he was induced thereby to sign the release, the same would not preclude a recovery,—is held to present the issues arising out of the release as favorably as plaintiff could require under the evidence.

Appeal from Hunt.   Tried below before Hon. L. A. Clark.

*Jos. F. Nichols,* for appellant.

*J. W. Perry,* for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—Howard Webb brought this suit against the Gulf, Colorado & Santa Fe Railway Company to recover damages for injuries received by him while engaged in unloading ties from a moving train.   A jury trial resulted in a verdict and judgment for the defendant.

Webb was section foreman of the company, and one Nickerson was division roadmaster.   Ties were needed on Webb's section, and Nickerson took a trainload of ties to the point where Webb was at work with his section crew.   Webb's testimony was to the effect that Nickerson, acting within the scope of his authority, directed the section crew to throw the ties from the train while it was in motion, and assigned to Webb the duty of hanging onto the ladder on the side of the car which was being unloaded and placing the ties in their proper position when they failed to fall where it was intended they should lie.   While the work was being done in this manner, a tie was thrown out, one end of which struck the ground and the other end caught against Webb's foot, thereby inflicting the injury complained of.

Webb testified that he had been foreman of that section for about five years and had worked as a section hand for several years before his promotion; that he was accustomed to unloading ties; that the safest way to unload ties is with the train standing still; that it is more dangerous to unload ties from a moving train, because when the train is moving the ties can not be thrown out regularly; that he had frequently during his five years' service as foreman unloaded ties in the manner in

which they were being unloaded when the accident occurred; that he was familiar with the character of the work and knew that it was more dangerous to unload ties from a moving train than when it was standing still; that he knew Nickerson's method of unloading ties to be that employed on the occasion in question, having done similar work under him in a like manner before that time.

One ground of negligence charged against the company was that appellant was required by his superior to unload ties from a moving train. The court did not submit this issue to the jury, and error is assigned because of the failure to do so. We are of opinion that the court did not err in this particular. It seems from the testimony of appellant himself that he was thoroughly experienced in the work he was doing and in the manner of its performance, and fully comprehended the dangers and hazards of it. Such being the case, he must be held to have assumed the risks incident to the business as it was being conducted. He and the company stood upon an equal footing with respect to the danger of the work as it was being carried on.

The danger of the service was patent and obvious to any man of the knowledge and experience of appellant, and he, knowing the hazard, voluntarily continued to perform the duty required of him. He did not complain to the company of the danger to which he was exposed, and exacted from the company no promise to change the method of doing the work. Under this state of facts, he can not recover on the ground that he was required to unload ties while the train was in motion. Bradford's Case, 66 Texas, 734; Drew's Case, 59 Texas, 13; Bonnet's Case, 89 Texas, 76.

The other ground of negligence alleged is that Nickerson, being in charge of the train, caused the speed thereof to be increased just before the accident occurred, thereby occasioning the injury. Upon this issue the court instructed the jury that if the danger and hazard of the work Webb was doing, when done at the rate of speed at which the train was being operated, was unknown to Webb, he was, other facts concurring, entitled to recover, but that if he knew at the time that the work was dangerous and hazardous in the manner and under the circumstances it was being done, then he could not recover.

The testimony of appellant shows that the train had been run about one-half mile from its starting point when the accident took place; that it was run at a speed of from two to six miles per hour; that the train was run down grade at an irregular rate of speed, starting off slowly, and gradually getting faster, then slowing up and repeating the performance; that at the time of the accident it was running at the fastest rate of speed employed on that occasion. There was no evidence showing that the speed was suddenly increased just before the accident, or that the train was given a sudden jerk. Webb's testimony was further to the effect that he controlled the speed of the train, in that when he thought it was running too fast he would signal Nickerson to have it slowed up

and Nickerson would repeat the signal to the engineer, who would obey the same. The evidence as to the speed of the train is not sufficient to raise the issue that the train was run at such a materially different rate of speed than that customarily employed, as to enhance the real risk of the work appellant was doing. In view of all the facts, we are of opinion that the charge under consideration must be held to be the application of the rule above stated, that if the servant, knowing that the business of the master is conducted in a dangerous manner, voluntarily continues in the employment, he assumes the risks incident thereto. Since the facts were established by the testimony of appellant himself, the court was justified in holding, as a matter of law, that appellant assumed the risk which produced his injury, and there was no error in the charge complained of, or in refusing the special charges asked by appellant, which embodied at length the rules of law relating to assumed risks and applied the same to the facts of the case.

Some weeks after the accident appellant, in consideration of $1 and the promise of one day's employment, released his claim for damages against the company and the release was pleaded in bar of a recovery. The court instructed the jury that if at the time appellant executed the release his injuries were in fact of a serious or permanent character, and that he had been led to believe by the company's surgeon that his injuries were only slight, and that he was thereby induced to sign the release, the same would not preclude a recovery. We are of opinion that this charge presented appellant's theory on the issues arising out of the release as favorably as could be demanded under the evidence.

The judgment is affirmed.

*Affirmed.*