SOUTHERN PAC. CO. v. STEVENSON.
(No. 1033.)

(Court of Civil Appeals of Texas. El Paso.
Jan. 22, 1920.)

1. MASTER AND SERVANT ⬤═150(1)—DUTY OF MASTER TO WARN OF UNKNOWN HAZARDS.

As a general rule, it is not the duty of the employer to warn the employé of a danger incident to the service; but, where there are hazards which the master knows of or ought to know that are unknown to the servant, it is his duty to warn.

2. MASTER AND SERVANT ⬤═150(8) — HEAD BRAKEMAN KNOWING TRESPASSERS TO BE ARMED NOT BOUND TO WARN REAR BRAKEMAN SHOT ON ENTERING CAR IN FACE OF WARNING BY TRAMPS TO KEEP OUT.

Where the head brakeman threatened by armed trespassers returned to the rear of the train and got his pistol in the presence of the rear brakeman, who with his pistol entered the car where the trespassers were and was shot after they warned him to keep out, the failure of the head brakeman to notify him that the trespassers were armed was not negligence for which the railroad company was liable.

3. MASTER AND SERVANT ⬤═203(1)—ASSUMPTION OF RISK NOT IN CASE WHERE THERE IS NO NEGLIGENCE.

Where there is no negligence on the part of the master, assumption of risk has no place in the case.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by Laura E. Stevenson, administratrix of the estate of Grover C. Stevenson, deceased. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

W. I. Gilbert, of Los Angeles, Cal., and Beall, Kemp & Nagle, of El Paso, for appellant.

A. J. Wilson, J. F. Weeks, C. L. Vowell, and Chas. Owen, all of El Paso, for appellee.

HARPER, C. J. Laura E. Stevenson, as administratrix and personal representative of the estate of Grover C. Stevenson, deceased, brought this suit against the Southern Pacific Company for damages for the negligent death of said Grover C. Stevenson.

For cause of action alleged: That deceased was employed as rear brakeman on freight train running between Lordsburg, N. M., and El Paso, Tex. That while the train was en route Fred Wilson, front brakeman, while attempting to pass over to the front of the train, discovered four Mexican trespassers riding in a gondola, or flat car. That when Wilson attempted to pass them they flourished knives and pistols and refused to permit him to pass. Whereupon he (Wilson) returned to the caboose, where deceased was riding, and requested him to go with him to the car where the trespassers were and assist him in passing over the train. That under the rules and customs of defendant it was the duty of Wilson, as head brakeman, to inform deceased of the threats so made by the trespassers, and of the dangers incident to passing said car, which he failed to do, but requested and permitted deceased to accompany him to the front of the train and by said trespassers whilst he was wholly ignorant of any danger, and of the fact that the trespassers were armed, etc. That if he had been so informed he would have refrained from assisting. That the failure to notify and warn deceased before he went to the car was negligence, by reason of which deceased was permitted, in the performance of his duty, to enter a place of danger, and as a consequence he was shot and killed. There is another theory of negligence charged, but the case was tried and submitted upon the theory that it was Wilson's duty to warn deceased that the trespassers were armed with pistols and knives, and actionable negligence for him to fail to so warn.

Defendant answered by general demurrer and general denial, and pleaded that decedent's death was due to risks and dangers assumed by him, for which the defendant was not liable, and further that decedent's death was proximately, wholly, and solely caused by his own negligence.

The case was tried before a jury and resulted in a verdict and judgment for plaintiff for $5,000, from which this appeal.

By various assignments and propositions it is urged that the court erred in refusing requested peremptory instruction for defendant.

Witness Wilson, who testified by deposition, being the only witness present who testified in the case, detailed the facts as follows:

"I knew Grover C. Stevenson during his lifetime. On the 18th of September, 1916, he was rear brakeman or flagman, and I was front brakeman, on a freight train, and on our run from Lordsburg, N. M., to El Paso, Tex. It was the duty of the front brakeman to get off of the engine near the apex of the Hawkins Hill and inspect the equipment to see if everything was all right, and on this particular occasion that was what I did. I told the conductor that I had inspected the train and that everything was all right. The conductor then told me that we would meet No. 9 at Wilna, and for me to go over the train to the front end and head in on the siding at Wilna. It was my duty to do that without orders from the conductor. When I was advised that we would meet No. 9, it was my duty to go over the train to the engine and put the train in on the siding. I told the conductor I would go over and put the train in on the siding at Wilna, and started for that purpose. I

would say we were about 10 or 12 miles out of Wilna at that time, and we had about 20 minutes to make it in to the siding. About five car lengths from the caboose I met four Mexican tramps. They were stealing a ride on the freight train, and they said to me that I could not pass them, and I told them I desired to pass for the purpose of going on the siding. They told me they would not let me go by. They cursed me and abused me. I told them I didn't care to put them off; that I only wanted to go over to the front end of the train, and I started down the ladder of a box car that was next to the gondola car, and when I started down they rose up and came towards me. One of them had a large knife, and two had large pistols and drew them out and flourished them at me, and told me I could not come down. It seemed that they could not understand what I was saying, and they would answer me back in Spanish. They would not agree to let me pass; I could tell that more from their actions than I could from the words spoken. They cocked their pistols and told me 'vamose'; and they used some curse words, and one of them pointed the pistol towards me and said 'vamose.' I started down the ladder again and told them I didn't want to hurt them; that I had to go over the train, as it was getting almost time to meet No. 9. There was one of the Mexicans who talked pretty fair English. I then climbed back upon the car and left them and went back to the caboose. I went back to the caboose to get the rear brakeman, who was Mr. Stevenson, to go over the train to where the Mexicans were and assist me.

"When I got back to the caboose, I found the conductor riding in the cupola where the rear brakeman usually rides. I told Stevenson that there were some tramps up there in a gondola car and they wouldn't let me go by. I told him they couldn't talk English and I couldn't talk Spanish, and for that reason we couldn't understand each other very well, and I asked him to go with me and help me get by them. No, I didn't tell Stevenson anything about them having knives and pistols, and that they threatened to kill me if I attempted to go by them. I could not talk Spanish, but Stevenson talked Spanish very fluently, and the men all talked Spanish but one fellow, who was taking very little part in the matter, and who could talk a little English. Stevenson said, 'Yes, you know me kid, I will go and assist you,' and got up and put on his coat, and we started out to go over to the front end and get by the Mexicans and head in No. 9. He started, but got no further than the gondola car, when he was killed. * * * As stated, they did not appear to be angry after Stevenson talked with them. Stevenson then started down the ladder, and I thought put his foot on the top of the gondola car, and about that time I saw a pistol in the hands of one of the Mexicans. That was the first pistol or knife that I saw after Stevenson and I got there. As stated, I thought Stevenson put his foot on the edge of the gondola car as if to step over, and a pistol fired. I thought at that time that Stevenson fired, but I learned later that a Mexican shot Stevenson. As stated, Stevenson started down into the gondola car and one of the Mexicans shot him. He either jumped into the car or fell; I could not tell which. I then jumped into the car myself, and, when I lit into the car, the Mexicans ran. Then Stevenson said to me,

'I am shot,' and took my hand and showed me where the blood was running. I then went to work to stop the train. I first went to Stevenson's body and felt for the pistol and couldn't find it, but later found it laying on the floor of the car. There was one chamber empty, which had no cartridge at all in it. Stevenson's pistol had not been shot."

The major portion of the cross-examination is about statements made by the witness at other times and written down and signed by him, for the purpose of contradiction or impeachment. The jury having found, in effect, that the evidence given upon the trial was true we only quote the statements made upon the trial as true:

"Yes, when the Mexicans warned Stevenson and myself not to come down into the gondola car, there was something said by Stevenson as he was going down into the car, or just after he fell, to the effect, 'to hell with you.' I was a little bit frightened at that time and am not able to give all the details of that transaction correctly, because it is not clear in my mind as to just how it was said. I would say it is true that Stevenson got his gun before leaving the caboose with me to go over the train to where the Mexicans were. While I did not see him get his gun or put it on, he had it when he was killed, and I know he carried it out of the caboose for that reason. My judgment is that he had it on when I went back, because he always carried his pistol."

It is further in evidence that, when the front brakeman should call upon the rear brakeman to assist in such matters, it became the duty of the rear brakeman to go along and help, and this is not controverted. The plaintiff was engaged in interstate commerce.

The above constitutes all of the facts: acts of omission and commission, upon which the merits of this case depend. Appellee asks an affirmance, and appellant urges that the court should have instructed a verdict for it. Many propositions are presented of which we select the following as the ones which raise the test questions in the case before this court:

(1) It is charged that there is no evidence in the case that Wilson violated any duty to deceased which was within the scope of his employment.

(2) That there is no evidence that deceased would have acted differently had he been informed that the Mexican trespassers were armed, but in fact the record shows that he would have acted as he did whether warned or not.

(3) Because the evidence shows he assumed the risk as a matter of law.

(4) Stevenson having been informed that the Mexicans were in the car, and had threatened him (Wilson), and would not let him pass, whereupon he armed himself, and after being warned "not to come down" attempted to cross the car, he chose the danger-

ous instead of a safe way of performing his work; therefore, assumed the risk.

(5) When he attempted to cross the car after being warned by the Mexicans not to do so, he was guilty of negligence which was the sole and proximate cause of his death.

[1, 2] The only duty due or owing by the company to deceased charged in this action is that by reason of the custom so to do, when the head brakeman, Wilson, called upon deceased, then the rear brakeman, to assist him in going through or past the trespassers, it became the deceased's duty to go, and that thereupon it became the duty of Wilson, who thereby became vice principal to deceased, to warn deceased of the extraordinary hazard, to wit, the fact that the trespassers were armed, and of the threats made upon his life and the dangers incident to approaching the car. As a general rule, it is not the duty of the employer to warn the employé of a danger incident to the service in which he is to engage. Railway Co. v. Hester, 64 Tex. 401; M. & P. Ry. Co. v. Callbreath, 66 Tex. 526, 1 S. W. 622. However—

"When there are hazards incident to an occupation, unknown to the servant, which the master knows or ought to know, it is his duty to warn the servant of them, * * * and this rule applies even where the danger or hazard is patent, if through youth, inexperience, or other cause the servant is incompetent to fully understand the nature and extent of the hazard." Railway Co. v. Watts, 64 Tex. 568.

The question here is: Did the master, through Wilson, know, or should it have known, of the real danger, to wit, that the trespassers would likely assault and take deceased's life? There is nothing in the record to indicate that Wilson knew anything of the trespassers not known by Stevenson, except the bare fact that they were armed.

Wilson told him that the Mexicans would not let him pass. He (Wilson), in Stevenson's presence, got his pistol and proceeded back along the train. Stevenson with his pistol proceeded to approach and to go down into the car where the trespassers were, and in the face of the warning given by them to him not to come down into the car, in the face of the facts it does not seem possible that Stevenson could still claim to be so ignorant of the dangers incident to going into the car as to call for further warning from the employer, if in fact the duty ever arose, for that a brakeman would be shot by a trespasser upon his train because he, the brakeman, insisted on going through his train, seems to be too remote a consequence to have been contemplated by Wilson representing the employer, or any other person. Wilson could not know of the ultimate result, and the facts are insufficient to charge him with the duty of apprehending such danger.

[3] There is no evidence in this record that Stevenson did not know the further fact that the Mexicans were armed, and appellant's suggestion that there is no evidence that Stevenson would have refrained from going into the car if he had the knowledge is equally true; but if we are correct in the holding that the evidence fails to establish that the duty to warn devolved upon appellant under the rules of law applicable, and that therefore there was no breach of duty constituting actionable negligence, the question of assumed risk has no place in the case. Magnolia Petroleum Co. v. Ray, 187 S. W. 1085.

For the reasons assigned, the cause is reversed and remanded.

WALTHALL, J. (concurring). I concur in the opinion as written by Chief Justice HARPER, but will add some of my individual views on the issues presented, with some additional evidence not copied in the opinion.

On the question of negligence of appellant, the court instructed the jury that if they should find from the evidence that one or more of the Mexicans riding in the gondola car were armed with pistols, and that the brakeman Wilson knew the Mexicans had pistols and did not inform Stevenson that the Mexicans were armed, and the jury should find that it was negligence under the circumstances not to inform Stevenson; and the jury should find that Stevenson did not know, and that a reasonably prudent man, situated as Stevenson was, would not have known, that one or more of the Mexicans were armed; and the jury should further find that at the time he was shot and killed Stevenson was engaged in the discharge of duties imposed upon him as a brakeman, and that the negligence of Wilson, if it was negligence, in failing to notify or warn Stevenson that the Mexicans were armed with pistols was the proximate cause of Stevenson being shot and killed—they would find for plaintiff on the issue of negligence. The court also instructed the jury that if Wilson told Stevenson that one or more of the Mexicans were armed with pistols, or if Wilson told Stevenson everything he had observed or heard in regard to the Mexicans, to find for appellant.

On the issue of assumed risk, the court instructed that if the jury should find that, after he had left the caboose and had reached the gondola car, the Mexicans warned Stevenson not to attempt to come into or cross over the gondola car, and that the action of the Mexicans was such as to place a reasonably prudent man on notice of the probable danger of so doing, and that notwithstanding such conditions and warning Stevenson attempted to go into and across said car, that by so doing he assumed all risk of danger thus created; also that if, when Stevenson was shot, he was not then engaged in the performance of any duty or employment he owed appellant, their verdict must be for appellant.

No issue is presented here as to the correctness of the court's charge in presenting to the jury the facts as pleaded constituting the custom out of which arise both the duty of the company to warn and the duty of the rear brakeman to perform the service of assisting the front brakeman to pass the Mexicans on the gondola car.

Appellant presents six assignments of error. The first assignment claims error in the refusal of the court to give a requested instruction to the jury to find for appellant. The several propositions under the first assignment, and the remaining assignments, on various grounds insist that the requested peremptory instruction should have been given. No rule or regulation of the company, or other evidence as to the duty of Stevenson in assisting the front brakeman, was offered in evidence save that of the custom pleaded and submitted.

Without stating the verbiage of the evidence on the issue of the custom alleged, it was to the effect that the custom was established by the brakeman, conductors, and men working on the trains as to their several duties under the custom; where there were only two. brakemen on a train, each brakeman is responsible for his half of the train, the head brakeman is responsible for the front end of the train and the rear brakeman for the rear end. The customs, in operating the trains, are not in printed rules. The printed rules prescribe duties of the brakemen, but there are customs in addition. There was a custom with reference to the duty of the rear brakeman under the following stated facts: Where the front brakeman, in going over the train for the purpose of putting a train on a siding, found one or more tramps on the train who would not let him go by, and he advised the rear brakeman of that fact, the tramps being on the half of the train next to the engine, the custom was to put them off. If the front brakeman could not put them off, he got the train crew to help him. If the front brakeman was advised by the conductor to go up to the front end of a train and head the train in on a siding and in going he found four Mexicans stealing a ride in a gondola car who refused to let him go by, and he went back and told the rear brakeman and asked him to go over and talk to the Mexicans because the rear brakeman could talk Spanish, and he, the front brakeman, could not get by himself and needed help, under the custom the rear brakeman would go.

Fred Wilson, the front brakeman, the only witness to the circumstances occurring just before and at the time of the death of Stevenson, testifies by deposition for appellee as copied in the opinion and some additional evidence as here stated.

On cross-interrogatories, in addition to the evidence found in the opinion, the witness stated he had testified in this case on a former trial, and also at a preliminary hearing before a justice of the peace in New Mexico in which the Mexicans were charged with the killing of Stevenson, and also had made a voluntary statement in the office of the attorneys for appellant. Many questions and answers thereto occurring on the former trial and on the preliminary examination and in the voluntary statement were submitted to the witness, and many of his answers then made were different from the answers given on the trial here. It is difficult to state from the record before us just what the witness now says of the former answers to the questions then asked him, and the matters contained in his voluntary statement, as the question seems not to have been asked whether his former answers and statements on points of conflict were true or not, or in what particulars they were true and what not true, or what his answers were on this trial to the questions, asked on the previous occasions; but the questions and answers on former occasions seem to have been used almost exclusively for the purpose of impeachment. However, some of the. statements of the witness seem sufficiently clear as being his answers to the questions asked in the cross-interrogatories. Witness said:

"The following answer is practically correct, but it doesn't state all that I said, 'Yes, sir, I told Stevenson four Mexicans were in the gondola car and they wouldn't let my by,' and after I got my gun and started he said, 'Wait a minute, you know me kid,' and he got his gun and we started over. This time when we came to them and they refused to let us down."

In answer to a question, and in part explanation of his former answer, the witness made this further statement:

"Yes, when the Mexicans warned Stevenson and myself not to come down into the gondola, there was something said by Stevenson as he was going down into the car, or just after he fell, 'To hell with you!'"

Witness said:

"The following question and answer, as far as it goes, seems to be correct, and if it was asked me I must have answered it as stated: 'Q. When you went back to the caboose to get your gun, after you had told Stevenson the trouble you had had with the Mexicans, he told you he would go with you, and he got his gun, and after he had changed his clothes he went back with you, did he not?' A. Yes, sir, but he had just started to change his clothes, and he said, 'Let me get on my coat first.'"

Witness further stated:

"Yes, I would say it was true that Mr. Stevenson got his gun before leaving the caboose with me to go over the train to where the Mexicans were. While I did not see Stevenson get his gun, or put it on, he had it when he was killed, and I know he carried it out of the caboose for that reason. My judgment is that he had the pistol on when I went back, because he always carried his pistol."

Much impeaching evidence as to the witness Fred Wilson was offered by appellant which I need not reproduce.

There is no statement of any witness in the record that it was the duty of Wilson under the circumstances stated, as is alleged the custom was, to inform Stevenson of the specific facts he had observed about the Mexicans, their conduct towards him, that they had pistols, or what knowledge he had as to danger from the Mexicans, in an attempt to pass them. There was no rule or regulation of the railroad company offered, and the evidence as to custom seems to have been confined to a condition existing when it was the desire of the trainmen to put a trespasser off the train. But Wilson testified that he had informed the Mexicans that it was not his purpose to put them off the train, and it is not shown that it was the purpose of Stevenson, or of himself and Wilson, to put the Mexicans off. Just why Stevenson went down into the gondola car is not made clear.

Now, under appellee's pleading, the duty of Stevenson to go to the assistance of Wilson rested, not upon an ordinary duty of his as rear brakeman, nor upon any rule or regulation of the company, but did rest, as alleged, wholly upon the custom then prevailing among the trainmen on that road at that time. The custom as pleaded is made the basis of the cause of action, and, if proved as alleged, it was the duty of Stevenson, in addition to his ordinary duties as rear brakeman, when called upon under the circumstances stated, to go to the assistance of the front brakeman. In order to fix the duty upon the company to inform Stevenson of the danger to him in going to the assistance of the front brakeman, and to show the breach or nonperformance of its duty, that is, the negligence of the company, it was alleged as a part of the custom, or usage then prevaling, that Wilson knew the danger to Stevenson in rendering the service for the company, but failed and refused to inform him of such danger. But there is no evidence found in the record that it was a part of the custom or usage that the front brakeman, when calling upon the rear brakeman for assistance, should also inform him of such danger as he then possessed, that is, as alleged and as submitted by the court that Wilson knew the Mexicans in the gondola car were armed with pistols and did not inform Stevenson of that fact. It would seem a necessary part of the custom to give warning of the danger, as upon it rests the duty of appellant, and the breach of that duty, the service being outside his ordinary service, and failure to warn being the negligent act assigned and submitted. It is not, as a general rule, the duty of an employer to warn or inform an employé of danger incident to a service unless the employé seeks such information. Missouri Pacific Ry. Co. v. Watts, 63 Tex. 549. It is only where the service of an employé is attended with extraordi-

nary hazard and such hazard is unknown to the employé and is known to the employer that it becomes the duty of the employer to warn the employé of such hazard. G., H. & S. A. Ry. Co. v. Garrett, 73 Tex. 262, 13 S. W. 62, 15 Am. St. Rep. 781.

Here, the service of Stevenson and the duty of the company arise outside of an ordinary service and solely by reason of the custom made the basis of the action. The information of the danger to be given under the custom seems, as alleged, to be more specific in the matter about which the employé is to be informed than the warning required as a matter of law arising as a matter of ordinary duty. To be a sufficient warning of danger simply as a matter of duty from the employer to the employé would not as a matter of law, independent of the custom alleged, require that Wilson inform Stevenson of the specific fact that the Mexicans had pistols. Then if we regard it as a matter of duty arising out of the custom alleged and submitted in the court's charge that Wilson should have informed Stevenson of the specific facts that the Mexicans in the gondola car had pistols and that he had seen the pistols, and that Wilson failed to so inform Stevenson of those very facts, and that Stevenson did not know the Mexicans were armed with pistols, there is no proof of such custom or usage. The proof of the custom prevailing is to the extent only that when the front brakeman discovered the Mexicans in the car who refused to let him go by, and he went back and told the rear brakeman of such refusal and asked him to go and talk to the Mexicans because the rear brakeman 'could speak Spanish, and that he, the front brakeman, could not speak Spanish and could not get by himself, and needed help, it was then the custom for the rear brakeman to go to his assistance. The evidence, I think, does not prove the custom as alleged and submitted, in that the proof fails to show that it was the custom to give warning of the specific facts from which the danger might arise. But, suppose it should be held that the custom as proven was sufficient to show that when called upon it was then the duty of Stevenson to go to the assistance of Wilson, and that the discharge of such duty was attended with such extraordinary hazard that it then became the duty of Wilson, the vice principal, as a matter of law rather than of custom, to warn Stevenson of the danger, it follows that the duty to give an employé warning implies a duty to give such warning as should be sufficient to apprise him of the danger incident to the service to be performed. Consumers' Cotton Oil Co. v. Jonte, 36 Tex. Civ. App. 18, 80 S. W. 847.

The question then arises, upon the sufficiency of the warning given to apprise Stevenson of the danger attendant upon the service to be performed by him, whether the warning was given by Wilson or by the Mexicans. Under the evidence as to the custom these be-

come pertinent inquiries: What duty was Stevenson then about to perform? Did Wilson then know what Stevenson was about to do and the danger attendant upon its performance? Did the performance of that duty arise out of the custom? In the first place, the evidence does not make it clear that Stevenson was to do more than to explain to the Mexicans in Spanish that Wilson must go over the car to head in at Wilna, and thus assist Wilson in going over the car. The evidence does not show that in going to the car in which the Mexicans were it was the purpose of the two brakemen that Stevenson himself was to go down into or over the car and thus perform Wilson's duty for him, but that he (Stevenson) should only help Wilson to go over the car by explaining in, Spanish to the Mexicans the necessity for Wilson to go over. It is not made clear that Wilson himself knew that Stevenson intended to go into the gondola car until he (Stevenson) put his foot down on the car in an effort to go down into or over the car. Without such intention was made clear to Wilson, we cannot see, from the evidence, that the duty Stevenson owed or was to perform in assisting Wilson was extraordinarily hazardous to Stevenson. Without repeating the evidence as detailed in the opinion and the additional evidence stated above, it seems to me that the statements by Wilson to Stevenson of what had occurred in his efforts to pass the Mexicans, that they would not let him pass; the warning given Stevenson by the Mexicans and what Stevenson himself necessarily knew as indicated by what he said and the preparations he made in carrying his pistol to where the Mexicans were, was sufficient, as a matter of law, as a warning to him of whatever there was of manifest danger to him in the discharge of the service he then owed the company, or was expected, or was then about to perform for appellant.

The undisputed evidence is that it was Wilson's duty, and not Stevenson's to go to the front and head the train in at Wilna, and I fail to find in the pleading or evidence any suggestion that it was ever the duty of Stevenson himself to go down into the gondola car, or that it became necessary for him to do so under any fact alleged or shown by the evidence, in assisting Wilson. The burden is on appellee to show just what service Stevenson was intending to perform for appellant in assisting Wilson to pass the Mexicans in the car, the extraordinary danger or hazard, if any, to Stevenson in performing that service; that Stevenson did not know of such danger; and that Wilson did know. Without these facts are made to appear, the trial court nor this court could know just what service Stevenson was expected to perform, the extraordinary hazard to Stevenson in its performance, or what additional warning of danger

Wilson should have given Stevenson in order to determine the issues of negligence of the company, or the risk assumed by Stevenson. In the condition of the record before us, I cannot say as a matter of law that Wilson should have advised Stevenson of the specific facts that the Mexicans had pistols and had exhibited them to Wilson and threatened to shoot him. All that the law requires of the employer, as a matter of duty in giving warning of danger of which he knows, and of which the employé does not know, is to give such warning as should be sufficient to apprise him of the danger in the discharge of a duty he owes to the employer. I am of the opinion that the undisputed evidence, as given by Wilson, shows that both Wilson and the Mexicans warned Stevenson of the danger of going down into the gondola car. The sufficiency of the warning seems to be a question of law and not of fact. Ft. Worth & D. C. Ry. Co. v. Smith, 39 Tex. Civ. App. 92, 87 S. W. 371. It seems to me that Stevenson had such warning, and if he did the company was not guilty of negligence and Stevenson assumed the risk incident to the service he was then supposed to perform in assisting Wilson to pass the Mexicans on the car. For the reason stated I think the case should be reversed and remanded.