HOUSTON & TEXAS CENTRAL RAILROAD COMPANY v. CHARLES P. MALLOY.

Decided March 19, 1909.

**1.—Negligence—Master and Servant—Dangerous Work—Warning.**

As a general rule it is not the duty of the master to instruct the servant as to the rules of the service or warn him of the dangers incident thereto unless information be asked; but this rule is subject to some qualifications.

**2.—Same—Extraordinary Risks.**

The master is prima facie bound to instruct a servant as to all risks which are abnormal or extraordinary and at the same time of such kind that the servant cannot be held chargeable with an adequate comprehension of their nature and extent or of the proper means by which to safeguard himself. The presumption is that all risks which belong to this category are not known to the servant; and the question whether the servant should have been warned is always for the jury where the evidence is fairly susceptible of the construction that the peril to which his injury was due was one of this description, and there is no positive evidence tending to charge him with actual or constructive knowledge of that peril.

**3.—Same—Contributory Negligence—Obeying Orders of Superior.**

When an act is done by one in obedience to the order of his foreman, the law will not declare the act of obedience negligence per se unless the danger of obeying the order was so obvious and glaring from the servant's standpoint at the time he undertook to obey it that no prudent man would have undertaken it, but will leave it to the jury to say whether he ought to have obeyed it or not.

**4.—Same.**

Where the servant was called from his regular work and under direction of the foreman struck on the end of an axle with a heavy hammer, and thereby caused a portion of soft metal in the end of the axle to fly out and strike him, and it appeared that the danger was known to the foreman and unknown to the servant, and that if the servant had struck truly in the center of the axle the metal would not have spurted out, but the fact that he did not so strike was not because of carelessness, but because of the impossibility of any one striking with such an implement in the same place at every blow, it could not be held that he was guilty of negligence either in obeying the order or in the manner in which he struck the blow, and the issue of negligence vel non was for the jury.

**5.—Same.**

See charge held to contain no errors of which the appellant could complain, and to sufficiently embrace the law applicable to the facts.

**6.—Evidence—Admission of Evidence—Harmless Error.**

A party will not be heard to complain of the admission of evidence when he has permitted like evidence to be introduced without objection.

Error from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Baker, Botts, Parker & Garwood* and *Lane, Jackson, Kelly & Wolters,* for plaintiff in error.—The plaintiff was by profession an expert boilermaker. He knew from experience and observation that the lathe holes were in the ends of the driving axle, and knew such holes were filled up with lead or other soft metal. He knew by experience in his

profession the effect of striking soft metal with a steel-faced hammer. Whatever danger there was of the lead or babbitt flying out under the blows from the hammer was as well known to him and as open to his observation as to the foreman or the other employes doing the same work, and there being no defect in the instruments used and the flying out of the lead or babbitt being the natural effect of a blow from a hammer on soft metal, the resulting injury was a known risk or danger ordinarily incident to such work, for° which the master is not liable. Gas Co. v. Robertson, 93 Texas, 503; Parish v. Railway, 76 S. W., 234; Klutts v. Gibson Bros., 37 Texas Civ. App., 216; Oil Company v. Shaw, 27 Texas Civ. App., 65; Sewer Pipe Co. v. Noll, 37 Texas Civ. App., 269; Railway v. Conrad, 62 Texas, 627; Railway v. McCarthy, 64 Texas, 636; Railway v. Bradford, 66 Texas, 736; Jones v. Railway, 11 Texas Civ. App., 39; Brown v. Miller, 62 S. W., 547; Railway v. Lempe, 59 Texas, 19; Railway v. French, 86 Texas, 96; Bridge Company v. Burnett, 85 Texas, 16; Railway v. Scott, 62 S. W., 1077; Railway v. Williams, 72 Texas, 159.

*Lovejoy & Parker,* for defendant in error.

McMEANS, ASSOCIATE JUSTICE.—This suit was brought by Charles P. Malloy as plaintiff against the Houston & Texas Central Railroad Company to recover damages for personal injuries sustained by him while in its employ. The plaintiff alleged that he was employed by the company as a boilermaker, and was sent from Houston to Austin in November, 1905, to work on certain boilers at that place. That while so engaged he was sent for by one Glass, foreman of the company's roundhouse at Austin, to assist in adjusting a driving-wheel of a locomotive on the axle by striking with a hammer on the end or face of the axle. That in obedience to the order of said roundhouse foreman, he struck with great force with a sledge hammer on the end of the axle and thereby caused a portion of lead, babbitt or other soft metal in the end of the axle to fly or spurt out and strike him in the eye, causing the loss of one eye. The plaintiff alleged with particularity that his injuries "were due to the negligence and carelessness of the defendant, its agents, servants and employes, in this: That plaintiff was not employed by defendant to do the character of work which he was required to perform and which he was performing when injured; that the work involved the danger of lead or babbitt or other soft metal flying or spurting out under the blows of the hammer, and was more perilous than the work plaintiff was employed to perform; that plaintiff was inexperienced in said work, and was ignorant of the danger of said metal flying or spurting out under the blows delivered by him on the end or the face of the said axle, and that he had not equal means with the defendant of knowing the danger; that defendant and its agents, servants and employes in charge of the said work knew, or in the exercise of ordinary care would have known, of the danger, and they knew, or in the exercise of ordinary care would have known, of plaintiff's inexperience and ignorance, and so knowing that, wholly failed to warn him of such danger. And in this connection plaintiff further alleges that the method employed in doing the work

was not the one usually and customarily employed in such cases; that the usual methods in doing said work were slackening the tire of the wheel by heating the same, by means of hydraulic pressure, to be applied in the regular workshops, etc.; that the defendant was familiar with such methods and had the facilities for applying the same, and that such methods involved no peril to those employed in their execution, and plaintiff is informed that defendant, after his injury, did in fact adjust the said wheel by the use of a sufficient and proper method, namely, hydraulic pressure."

The defendant answered by general demurrer, general denial, and pleaded assumed risk and contributory negligence. A trial before a jury resulted in a verdict and judgment for plaintiff for the sum of $6,000. The case is now properly before us on writ of error.

· The evidence justifies the following conclusions of fact: Plaintiff was about thirty years old and had worked several years in railroad shops and was an expert boilermaker, and was employed in that capacity in defendant's railroad shops in Houston; in November, 1905, several days before his injury, he had been sent by his foreman at Houston to Austin to make certain repairs upon boilers of locomotives there, and directed to report to one Glass, the defendant's foreman at Austin, upon his arrival. This he did, and was put to work by Glass upon the boilers he was sent to repair, and continuously engaged in this work up to the 28th of November, 1905, when the foreman Glass sent for him to assist in trying to force into position one of the driving-wheels of a locomotive that had moved a little out of line on the axle. The axle, when originally made, is turned or rounded by means of a lathe, the axle being held by appliances at each end in holes called "lathe holes," that are afterwards filled with lead or babbitt metal which conceals the hole and makes the end of the axle smooth and gives it the appearance, after it is painted, of being solid. Plaintiff knew that lathe· holes were in the ends of all such axles and that some of these holes were filled with lead or babbitt metal, but at the time in question he did not think of it. When he reached the engine he found the foreman and some of his machinists striking the end of the axle, and was told by the foreman to strike with the hammer on a piece of iron which was held against the end of the axle; but this he declined to do for fear that the iron, being brittle, would break under the force of his blows and that flying particles might injure himself or some of the others present, and, to demonstrate the reasonableness of his fear, struck the iron a light blow which broke it. The iron was then removed and plaintiff was directed by the foreman to strike on the naked end of the axle, which he did, without the hoped-for result. Plaintiff then suggested the use of a ram, and one was constructed, but the piece of iron used as a ram was too light to answer the purpose, and this method was abandoned. The foreman again directed plaintiff to strike the end of the axle with the hammer, and, although the latter protested that his efforts would be futile because the driving-wheels were placed on the axles by hydraulic pressure of forty or fifty thousand pounds and could not be moved by the method employed by the foreman, he, in compliance with the orders of the foreman, again began striking the naked end

of the axle, and on delivering the last blow a piece of lead or babbitt metal, with which the lathe hole was filled, spurted out, striking plaintiff in the eye with such force as to destroy the sight and to require the removal of the eye. The work which plaintiff was called upon to perform was work usually done by machinists and their helpers and not by boilermakers, but the work in question was not such as required any special skill further than to strike with reasonable accuracy a heavy blow with a sledge hammer. It was not infrequently the case that boilermakers would be directed by their superiors to do certain kinds of work usually performed by machinists where no special skill was required, and, when called upon by the proper authorities to do such work, were required to obey. Had plaintiff thought about it he would have known that the soft metal was in the lathe hole, but he had never worked with that character of metal, nor had he ever done that character of work before, nor had he seen it done, and did not know that the metal was likely to fly out under the force of the blows. The foreman did know this, however, although he did not think of it at the time; and the uncontradicted evidence is that such blows delivered on the face of the axle frequently caused the soft metal to spurt out with such force as to injure persons nearby, and that this was known to machinists generally. Plaintiff was unaware of this danger, and the foreman did not warn him, nor did he take any precaution against plaintiff being injured by the flying out of the metal. It was shown that the reason the metal flew out was because plaintiff, although directed to strike as near the center of the face of the axle as possible, did not strike truly, so that the face of the hammer did not entirely cover the soft metal in the lathe hole and thereby prevent the spurting out of the metal, but that with a hammer weighing eighteen to twenty pounds it is impossible to strike in the same place every time. The end of the axle had been painted, and the lead or babbitt metal was not visible prior to the blow that caused a part of it to fly out and injure plaintiff.

Under these facts we conclude that the plaintiff was not guilty of contributory negligence in striking upon the axle under the circumstances, nor was his injury the result of a risk assumed by him, but was due to the negligence of defendant in failing to warn plaintiff of a latent danger of which the plaintiff did not know, but of which the defendant knew or in the exercise of ordinary care should have known.

By its first assignment of error plaintiff in error complains of the refusal of the court to give its first special charge instructing the jury that under the undisputed facts the plaintiff had failed to show any liability on the part of the defendant, and to return a verdict for defendant. It is urged in support of this assignment (1) that the testimony being undisputed, and the facts being such that ordinary minds could not differ in concluding that no actionable negligence was shown, it was the duty of the trial court to direct a verdict for the defendant as requested in the special charge; (2) that whatever danger there was of the lead or babbitt metal flying out under the blows from the hammer was as well known to plaintiff, as open to his observation, as to the foreman, and there being no defect in the instruments used, and the flying out of the lead or babbitt metal be-

ing the natural effect of a blow from a hammer on soft metal, the resulting injury was a known risk or danger ordinarily incident to such work for which the defendant was not liable; and (3) that the undisputed testimony showing that the flying out of the soft metal was directly caused by the improper and careless manner in which plaintiff struck the blows, not on the center on the axle face, his own careless conduct was the proximate cause of the injury, and he was not entitled to recover.

The foregoing findings necessarily dispose of these contentions adversely to plaintiff in error. The danger to which plaintiff was subjected was not open to his observation and was not known by him, but was known to the foreman who was the representative of the master. Plaintiff had had no previous experience in that kind of work further than that he knew how to wield a sledge hammer; and he was employed in a different department of the service from those whose duties required them to perform such work, yet he was called from his duties and ordered to perform service in another department, which order he was required to obey, and which he undertook to obey without knowledge of the danger, and was given no warning by the foreman.

In Missouri Pac. Ry. v. Callbreath, 66 Texas, 526, it is said by our Supreme Court: "As a general rule it is not the duty of the employer to instruct him (the employe) as to the rules of the service, or warn him of the dangers incident thereto, unless information be asked." (Missouri Pac. Ry. Co. v. Watts, 64 Texas, 568.) But the court proceeds to say: "This rule is subject to some qualifications. It was held by the court in the case last cited that the servant being inexperienced and ignorant of the dangers of the service upon which he was just entering, it was the duty of the company to have informed him of the dangers. The law is thus stated by a well-known text writer: 'When there are hazards incident to an occupation which the master knows or ought to know, it is his duty to warn the servant of them fully and, failing to do so, he is liable to him for any injury that he may sustain in consequence of such neglect, and this rule applies where the danger or hazard is patent, if through youth, inexperience or other cause, the servant is incompetent to fully understand the nature and extent of the hazard.' Wood on Master & Servant, 714." Houston & T. C. Ry. Co. v. Rutland, 45 Texas Civ. App., 621. As said in the case last cited, "We think that the correct rule applicable to cases where the danger is secret and extraordinary, as in the present case, is thus stated in appellees' brief quoting from Labatt on Master and Servant: 'The doctrine which may be regarded as representing the converse of the propositions discussed in the preceding sections, is that a master is prima facie bound to instruct a servant as to all risks which are abnormal or extraordinary and at the same time of such a kind that the servant can not be held chargeable with an adequate comprehension of their nature and extent, or of the proper means by which to safeguard himself. The presumption is that all risks which belong to this category are not known to the servant. Hence the question whether the servant should have been warned is always for the jury where the evidence is fairly susceptible of the con-

struction that the peril to which his injury was due was one of this description, and there is no positive evidence tending to charge him with actual or constructive knowledge of that peril.' Labatt, Master & Servant, secs. 240, 241; Bailey, Master & Servant, 111 et seq., 124, 125; Mather v. Rillston, 156 U. S., 399, 15 Sup. Ct., 464, 39 L. ed., 464; Dowling v. Allen, 74 Mo., 13, 41 Am. Rep., 298; Perry v. Marsh, 25 Ala., 659; Smith v. Peninsular Car Works, 27 N. W., 662, 60 Mich., 501, 1 Am. St. Rep., 542; Fox v. Peninsular Car Works, 48 N. W., 203, 84 Mich., 616; McGowan v. La Plata, etc., Co. (C. C.), 9 Fed., 861; Kliegel v. Aitken, 94 Wis., 432, 69 N. W., 67, 35 L. R. A., 251, 59 Am. St. Rep., 901; Western U. Tel. Co. v. McMullen, 58 N. J. Law, 155, 33 Atl., 384, 32 L. R. A., 353." Applying this rule to the facts of the present case, we think the evidence was sufficient to authorize the jury to find that plaintiff in error was negligent in failing to instruct the plaintiff as to the danger in the work which he was ordered to perform.

Nor do we think that the plaintiff was guilty of negligence as a matter of law in the manner in which he struck upon the face of the axle. It may be that if he had struck truly in the center the metal would not have spurted out, but the fact that he did not so strike was not because of carelessness upon his part, but because of the impossibility of any one striking with such an implement in the same place at every blow. There is nothing in the facts of this case to justify the court in taking the case from the jury. The danger of striking upon the axle was not so patent to plaintiff as to justify him in refusing to obey the command of his superior, or to render such obedience an act of negligence under the circumstances. "Where an act is done by one in obedience to the order of his foreman, the law will not declare the act of obedience negligence *per se,* unless the danger of obeying the order was so obvious and glaring from the servant's standpoint at the time he undertook to obey it that no prudent man would have undertaken it, but will leave it to the jury to say whether he ought to have obeyed it or not." (International & G. N. Ry. v. Wray, 43 Texas Civ. App., 380; Galveston, H. & S. A. Ry. Co. v. Puente, 30 Texas Civ. App., 247.)

There are a number of assignments of error complaining of the charge of the court and the action of the court in refusing special charges. We think the main charge of the court sufficiently presented to the jury the law of the case upon the issues involved. In our judgment it contains no errors of which the plaintiff in error can complain, and sufficiently embraces the law applicable to the facts proved as to render the requested special charges wholly unnecessary. The charge of the court, omitting various definitions, is as follows:

"Now, therefore, if you shall believe from a preponderance of the evidence that plaintiff, while at work for defendant on certain of its boilers at Austin, Texas, was sent for by Charles Glass, foreman of defendant's roundhouse at Austin, and ordered by said Glass to strike with a sledge hammer with great force upon the end or face of the axle or journal of a locomotive, and believe there was lead in a hole in the end of the said axle or journal, and that the striking by plaintiff caused a portion of the lead to fly or spurt out and strike plaintiff

in his right eye and injure the eye so that the same had to be and was thereafter removed; and you further believe from a preponderance of the evidence that the said Glass, as foreman of defendant's round-house, had authority to order plaintiff to strike upon the axle or journal, and you believe that plaintiff was caused to strike thereupon by the order of said Glass, and that in so doing he did that which a man of ordinary prudence would have done under the circumstances, and you believe that the flying or spurting out of the lead under the blows delivered by plaintiff and striking him in the eye, if it did that, was a latent or secret danger incident to the said work of striking, and believe that the said danger, if any, was known to the defendant and the said Glass before the said striking, and believe that the said danger, if any, was unknown to plaintiff at the time of the said striking and would not have been known to him in the exercise of or-dinary care at said time, and believe that the said Glass, in ordering plaintiff to strike upon  the said axle or journal, if he did that, rested under a duty to plaintiff to warn him of the said danger, if you find there was such danger, and believe he failed to give him such warn-ing, and that in so failing he was guilty of negligence as that term has been hereinbefore defined to you, and you believe that such negli-gence, if any, was the proximate cause of plaintiff's injury, and you do not find that plaintiff assumed the risk of injury or was himself guilty of contributory negligence, as hereinafter explained to you, you will return a verdict for plaintiff, but unless you so find you will re-turn a verdict for defendant.

"If, however, you do not find from a preponderance of the evidence that plaintiff was caused to lose his eye by lead flying or spurting out of a hole in the end of the axle or journal under the striking of plaintiff; or if you do believe that he lost his eye from such cause but do not believe such action of the lead was a latent or secret danger, or if you believe that the said danger, if any, was unknown to the said Glass and would not have been known to him in the exercise of ordinary care; or if you believe the danger was not of such character as to impose upon the said Glass when he ordered plaintiff to strike upon the said axle or journal, if he did that, the duty to warn him thereof in the exercise of ordinary care; or if you believe plaintiff had equal means with defendant of knowing the danger, if any, you will, without inquiring further, return a verdict for defendant.

"Or if you believe the striking was attended by a latent or secret danger, but yet you believe that the plaintiff knew thereof, or in the exercise of ordinary care would necessarily have known thereof; or if you believe the said danger, if any, was open to ordinary observation or was patent or obvious, then in either such case he assumed the risk of injury therefrom, and you will return a verdict for the defendant.

"Or if you believe from a preponderance of the evidence that plain-tiff carelessly and recklessly struck upon the axle or journal and upon the lead or other soft metals thereof in such manner and with such force as to cause his injury, and that in so doing he was guilty of 'contributory negligence,' you will also return a verdict for defendant.

"Or if you believe that the accident which occurred to plaintiff was

one which arose from the ordinary risks of the business in which he was engaged, you will find for defendant.

"Or if you believe the plaintiff's injury was the result of an accident, you will also return a verdict for defendant.

"Or if you find that the plaintiff has failed to prove by a preponderance of the evidence that the injury to his eye was caused by a piece of lead or babbitt or other soft metal which was in the end of the journal striking him in the eye; or if he has failed to prove by a preponderance of the evidence what missile struck him and where it came from, you will find for defendant."

Plaintiff in error's fourth assignment is as follows: "The court erred in permitting the plaintiff to testify over the objection of the defendant, that if the missile which struck him in the eye had been a piece of steel off of the hammer it would have produced a more serious injury than that which occurred to him, because the plaintiff testified that he did not know what struck him in the eye, and this question and answer elicited merely an inference based upon his opinion, and should not have been permitted to go to the jury as evidence."

Plaintiff alleged, and was then endeavoring to prove, that the missile that injured him was a piece of lead or babbitt metal that flew out of the lathe holes under the force of his blows. While testifying in his own behalf he was asked by his counsel: "If that had been a piece of steel off of the hammer, what would have been the result?" and was permitted, over the objection of defendant, to reply: "It might have been more serious."

If the evidence was not competent, and upon this we make no decision, we think that its admission was harmless error, because it seems clear the defendant waived the objection by consenting for plaintiff to introduce in evidence the following portion of his written statement made at the instance of defendant soon after he was hurt: "After hitting several times, a piece of metal flew and hit me in the eye. It is my idea it was a particle of lead that hit me. I think had it been steel it would have gone through my head further than it did. I do not hardly think it could have been a piece of the hammer, as the journal (axle) was of sufficient width so that I would not hit an edge which might have slivered it." The defendant then introduced in evidence the whole of the statement including the portion above set out. The assignment is overruled.

We are of the opinion that plaintiff in error's assignments present no reversible errors, and the judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.