## FARMERS' COTTON OIL CO. v. BARNES.†

(Court of Civil Appeals of Texas. Jan. 28, 1911. Rehearing Denied Feb. 11, 1911.)

1. TRIAL (§ 253*)—INSTRUCTIONS—CONSTRUCTION OF CHARGE AS A WHOLE.

A charge in an action for injuries to a servant, which presents affirmatively the servant's theory of the case, is not erroneous for ignoring the defensive issues of assumed risk and contributory negligence, fairly submitted in another charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

2. MASTER AND SERVANT (§ 291*)—INJURIES TO SERVANT—INSTRUCTIONS.

A charge in an action for injuries to a servant, which presents affirmatively the servant's theory of the case, should not, in addition to the facts therein enumerated, require that, to find for plaintiff, the jury must find that he was not guilty of contributory negligence and had not assumed the risk, and thereby impose on him the burden of proving the absence of contributory negligence and the absence of assumption of risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1143, 1144; Dec. Dig. § 291.*]

3. TRIAL (§ 260*)—INSTRUCTIONS—INSTRUCTION COVERED BY CHARGE GIVEN.

It is not error to refuse a requested charge sufficiently covered by the charge given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. § 260.*]

4. MASTER AND SERVANT (§ 295*)—INJURIES TO SERVANT—EVIDENCE—INSTRUCTIONS.

Where, in an action for injuries to a servant caught by a set screw in a revolving shaft, there was evidence that the screw could not have been seen at night while the servant was at work, and that he did not know of its existence, a charge that, on entering and continuing in the service, the servant assumed the risk of any injury ordinarily incident to the work, and, if the injury resulted from such an accident, there could be no recovery, and that, if the servant knew that the set screw protruded and was dangerous, or if that was obvious, he assumed the risk, and could not recover, properly submitted the defense of assumption of risk, though it did not conclude, "though the jury should believe defendant to have been guilty of negligence."

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179; Dec. Dig. § 295.*]

5. MASTER AND SERVANT (§ 291*)—INJURIES TO SERVANT—ASSUMPTION OF RISK—EVIDENCE—INSTRUCTIONS.

Where, in an action for injuries to a servant caught by an unguarded set screw, the servant testified that he knew that there were many unguarded set screws in the mill, that there must be a set screw in every set collar, and that, if the screws were exposed, he would have to be careful or get caught, but that he had not up to the time of his injury known that the particular set screw or that other set screws protruded, and several witnesses testified that the set screw which caused the injury could not have been seen at night while the mill was in operation, and that the servant did not work in the room except at night, an instruction that the servant could rely on the assumption that the appliances were safe, that he was not required to use ordinary care to see whether they were safe, and that he did not assume the risk of the master's failure to do its duty unless he knew of the failure and attendant risks, or, in the ordinary discharge of his duty, must have acquired the knowledge, was not objectionable as charging that the servant was not required to use ordinary care to see whether the appliances were reasonably safe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1138, 1139; Dec. Dig. § 291.*]

6. MASTER AND SERVANT (§ 217*)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

A servant, though he owes no duty of inspection, cannot shut his eyes to dangers obvious to the ordinary man, and he assumes the risks of a danger of which he has actual knowledge and of such hazards as he would have learned by the ordinary circumspection of a prudent man.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 584–592; Dec. Dig. § 217.*]

**7. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—ASSUMPTION OF RISK—QUESTION FOR JURY.**

Whether a servant injured by being caught by an unguarded set screw in a revolving shaft knew of the screw, or whether in the course of his work he must have known thereof or of the danger incident thereto, *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

**8. MASTER AND SERVANT (§ 235*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.**

A servant employed as oiler in a mill who knows that there are many unguarded set screws and that there must be a set screw in every set collar, but who does not know that the screws are exposed, need not inspect the appliances, and his failure to make an examination and discover that a set screw which caught him and injured him was exposed did not defeat a recovery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722; Dec. Dig. § 235.*]

**9. TRIAL (§ 260*)—INSTRUCTIONS — INSTRUCTIONS COVERED BY THE CHARGE GIVEN.**

Where, in an action for injuries to a servant caught by an unguarded set screw, the court charged that the servant assumed the risk and could not recover if he knew that the set screw protruded beyond the surface of the collar, or if, in the exercise of his duties, he must have necessarily known it, or if the same was obvious, the refusal to charge that if a person of ordinary prudence in the discharge of his duties, and of the knowledge possessed by the servant, would have examined the set screws to see if they were exposed, and if the servant failed to make such an examination, and, if he had made such examination, he would have known the facts, the verdict must be for defendant, was proper; the requested charge being sufficiently covered by the one given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 657; Dec. Dig. § 260.*]

**10. MASTER AND SERVANT (§ 291*)—INJURIES TO SERVANT—EVIDENCE—INSTRUCTIONS.**

Where, in an action for injuries to a servant caught by an unguarded set screw, there was no evidence that the protruding screws of which the servant had knowledge were in places where the servant could come in contact with them, except when revolving so slowly that they were not dangerous, the refusal to charge that if there were in the master's mill a number of shafts to which were attached protruding set screws, and the servant knew that a portion of the screws were exposed, and if, with such knowledge, a person of ordinary prudence in the discharge of his duties would have examined the screws to see whether they were exposed, and if the servant failed to make such an examination, the verdict should be for the master, was proper because not justified by the evidence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 291.*]

**11. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR — ERRONEOUS ADMISSION OF EVIDENCE.**

Any error in admitting testimony to prove a fact shown by other testimony received without objection is not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4161; Dec. Dig. § 1051.*]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Action by E. A. Barnes against the Farmers' Cotton Oil Company. From a judgment for plaintiff, defendant appeals. Affirmed.

S. C. Padelford and Ramsey & Odell, for appellant. Walker & Baker, for appellee.

TALBOT, J. This action was brought by the appellee, Barnes, against the appellant to recover damages for personal injuries sustained by him while employed as oiler in the appellant's cotton oil mill at Cleburne, Tex. The petition alleges that the appellant was negligent in permitting a set screw to protrude from a rapidly revolving shaft, and in directing him to put a belt on a pulley attached to said shaft without warning him of the exposed condition of said set screw and of the danger thereof, as a result of which appellee's clothing caught on the screw and his body revolved around the shaft, injuring him in various ways, and requiring the amputation of his right foot above the ankle. The defendant answered by general demurrer, general denial, assumed risk, and contributory negligence. The case was tried by the court and a jury, and resulted in a verdict and judgment in favor of the plaintiff for $5,750, and the defendant appealed.

Appellant's first assignment of error is that the court erred in the sixth paragraph of its charge to the jury, for the reason that same ignores the defensive issues of assumed risk and contributory negligence, and instructs the jury that, if they find the defendant was negligent in the respects therein charged, to find for the plaintiff, without regard to the question as to whether plaintiff had assumed the risk of injury by reason of his knowledge of such alleged defective condition or otherwise, or was guilty of contributory negligence under the circumstances. The charge was not defective for the reasons claimed. The court in this paragraph of his charge was submitting plaintiff's theory of the case and therein grouping the facts, the existence of which authorized a verdict for the plaintiff. The submission of the defensive issues of assumed risk and contributory negligence was properly reserved for subsequent paragraphs of the charge, in which, and in special charges asked, these issues were fully and fairly submitted for the decision of the jury. This method of submitting the issues is not subject to the criticism that it renders the charge as a whole confusing, misleading, or contradictory. The charge complained of presented affirmatively the plaintiff's theory of the case, and should not have required, in addition to the facts therein enumerated, in order to return a verdict for the plaintiff, that he was not guilty of contributory negligence, and had not assumed the risk of injury, by continuing in the employment of the appellant. Railway Co. v. Steele, 50 Tex. Civ. App. 634, 110 S. W. 171. This court has held

---

that a charge which required the jury in a personal injury suit to find, in addition to facts alleged and relied on by the plaintiff for a recovery, that the plaintiff was himself in the exercise of ordinary care at the time injured, imposed the burden of proving the absence of contributory negligence, and was error. Pares v. Railway Co., 57 S. W. 301. The cases referred to by appellant in support of this assignment are not applicable, or do not, in our opinion, sustain its contention.

What has been said also disposes of appellant's second assignment of error.

The third, fourth, and fifth assignments of error complain, respectively, of the court's refusal to give certain special charges requested upon the subject of assumed risk. There was no error in refusing these charges for the reason that each of them was sufficiently covered by the court's main charge and special charges given at the instance of appellant. In the fourth special charge, requested by the appellant, the jury were instructed as follows: "You are instructed that, on entering the service of the defendant and in continuing in its service and in the discharge of the duties he was employed to perform, the plaintiff assumed the risk of any accident or injury ordinarily incident to the character of work which he was employed to perform, and if you believe that the plaintiff's injuries resulted from an accident such as was ordinarily incident to the character of work plaintiff was employed to perform, then, in such an event, you will find for the defendant." And in the ninth paragraph of the general charge they were told: That although they might find from the evidence that the set screw did protrude beyond the surface of the collars, and was in a dangerous condition, yet if they further found from the evidence that the plaintiff knew this, or in the course of his duties must necessarily have known it, or if the set screw was obvious—that is, its condition was apparent to the observation of an ordinarily prudent person situated as plaintiff was—then he assumed the risk, and they should find for the defendant. These charges were sufficient to fully guard the rights of appellant under the facts of this case in respect to the defenses to which they related, and it was not essential that they should have concluded with the language, "even though you should believe defendant to have been guilty of negligence in any one or all of the respects alleged by plaintiff in his petition." The court charged the jury in the eighth paragraph of the general charge as follows: "While the plaintiff was in the employ of the defendant, he had the right to rely upon the assumption that the machinery, tools, and appliances with which he was called upon to work were reasonably safe, and that the business was conducted in a reasonably safe manner. He was not required to use ordinary care to see whether this had been done or not. He did not assume the risk arising from the failure of the defendant to do its duty unless he knew of the failure and the attendant risks, or in the ordinary discharge of his own duty must necessarily have acquired the knowledge." This charge is objected to on the ground that it instructs the jury that the plaintiff was not required to use ordinary care to see whether the machinery, tools, and appliances with which he was called upon to work were reasonably safe; the contention being, in effect, that it was shown, without dispute, that the plaintiff knew at the time of his injury that there were a number of protruding set screws upon revolving shafts in the mill at which he was at work, which he had observed in the discharge of his work, and this was sufficient to put him on notice that others might be unguarded also and to require the use of ordinary care to ascertain the condition of the screw, which caused his injuries. Therefore it was error for the court, under such circumstances, to instruct the jury that the plaintiff was not required to see that said screw protruded. We think this contention should not be sustained. While the plaintiff testified that during the time he worked for the defendant he knew there were a large number of unguarded set screws in the mill, and knew from experience that there was bound to be a set screw in every set collar, and that, if the screws were exposed, he would have to be very careful or get caught, and, notwithstanding, witnesses for the defendant testified that so far as they knew all the set screws in the mill were exposed, and that the screw in question could be seen at night when the shaft was making the revolutions per minute it usually made when in operation, yet the plaintiff further testified that he had not up to the time of his injury noticed, and did not know, that the particular set screw causing his injuries, or the other screws, protruded. Several of the witnesses who worked in defendant's mill and who had had from three to four or more years' experience in observing and operating the machinery therein testified, in effect, that the screw which caught plaintiff's clothing and caused his injury could not have been seen at night while the mill was in operation, and that plaintiff did not work in the room in which said screw was situated, except at night. C. M. Horn, who had worked three seasons for the defendant and assisted in putting in the shaft to which the screw in question was attached, said: "As to whether the set screw in question could or could not be seen at night with machinery in operation, I'll answer this way: If a man was looking for that, if that was his business to be looking for it, he might accidentally discover something sticking up. I couldn't be positive about it either way." J. A. Warwick testified: "I have worked up there both

day and night. When the mill was in operation at night, the set screw could not be seen, unless you were looking for it. The light was scarce, and the machine would have to be stopped. The way it was running it couldn't have been seen at all. It was running very rapidly. You could only see a little glimmer where the set screw was located—you couldn't tell what it was." John Lightfoot testified: "When the mill was in operation that way at night, if a man didn't know that that set screw was there, he wouldn't see it at all." G. C. Palmer, who had previously held the same position that appellee held at the time he was injured, stated that this set screw could not be seen at night while the mill was in operation.

We are aware that the law is well settled that, notwithstanding the servant owes no duty of inspection, yet he cannot shut his eyes to dangers that are obvious to ordinary man, and "assumes the risks of a danger of which he has actual knowledge and of such hazards as he would have learned by the exercise of that ordinary circumspection which a prudent man would have used in the particular employment." This rule of law has not in our opinion been violated by the charge under consideration. The court was not authorized to say under the evidence as a matter of law that the appellee actually knew that the set screw causing his injuries protruded or that such condition of the screw was obvious or that appellee in the discharge of the duties required of him must have known by the exercise of that circumspection which an ordinarily prudent man would have used in the particular work in which he was engaged of the hazard to which he was exposed by the negligence of appellant in permitting the set screw to protrude as the evidence shows it did. Whether the projection of the set screw was actually known to appellee before or at the time he was injured by it, or whether it was obvious, or whether in the performance of the work he was directed to do appellee must necessarily have known of such projection and the danger incident thereto; were all questions of fact for the jury, and should have been and were by appropriate instructions submitted to the jury. No duty of inspection rested upon appellee, and, in the absence of knowledge to the contrary, he could rely upon the assumption that the appellant had exercised ordinary care to furnish him reasonably safe machinery with which to work.

The seventh, eighth, and ninth assignments of error are grouped, and complain of the court's refusal to give certain special charges requested by the appellant. Each of these charges is to the effect that if there were in defendant's mill a number of revolving shafts to which were attached exposed or protruding set screws, and plaintiff knew that a portion of said screws were exposed, and that with such knowledge a person of ordinary prudence in the discharge of his duties would have examined the set screws in question to see whether the same were exposed or protruding, and that the plaintiff failed to make such an examination to discover whether the set screw in controversy was exposed, and that, if he had made such examination, he would have known said fact, then to find a verdict in favor of the defendant. These charges, in effect, imposed upon the appellee the duty of inspection, and were properly refused. If this was not the effect of the charges, then they were properly refused because the law applicable to that phase of the case to which they relate was correctly given in charge to the jury in the ninth paragraph of the court's general charge, wherein they were instructed that the appellee assumed the risk and could not recover if he knew that the set screw protruded beyond the surface of the collar, or if, in the course of his duties, he must necessarily have known it, or if the same was obvious; that is, if its condition was apparent to the observation of an ordinarily prudent person situated as plaintiff was. Again, we think neither of the charges in question was called for by the evidence, and that, had either been given, the jury would have been misled thereby, because there is no evidence showing that the protruding set screws of which the appellee had knowledge were in places where the workmen could come in contact with them, except when they were revolving so slow that they were not dangerous.

Nor did the court err in refusing to give the special charges relating to the question of contributory negligence, and made the basis of appellant's tenth and eleventh assignments of error. These charges, so far as applicable, were sufficiently covered by the instructions contained in the tenth paragraph of the court's charge, and special charges given at the request of appellant.

Appellant's eighteenth assignment of error is to the effect that the court erred in admitting in evidence the testimony of the witness Warwick that he had been caught upon the same set screw upon which appellee's clothing was caught prior to the accident to appellee. Mr. Thompson in his work on Negligence, lays down the rule upon this subject, and which is quoted in appellant's brief, as follows: "Evidence of similar accidents from the same cause, though of slight probative value, is sometimes admitted as tending to prove the dangerous character of the machine. The better rule allows such evidence on the question of the master's knowledge of the condition of an appliance, and for that purpose only. * * * Proof of similar accidents is clearly inadmissible where an employer does not controvert the dangerous character of the appliance, but sets up as a sole defense that the employé assumed the risk by continuing in the employment with knowledge of the danger." It is doubtless true that, in the sense that the undisputed evidence showed that the exposed and pro-

jecting set screw causing the appellee's injuries was dangerous, the dangerous character of said screw was not controverted by the appellant, but, applying the rule literally, it can hardly be said that the sole defense set up by the appellant was that appellee, with knowledge of such danger, assumed the risk thereof by continuing in its employment. But if it be conceded that the appellant did not controvert the dangerous character of the set screw, but set up as a sole defense that appellee assumed the risk by continuing in its employment with knowledge of the danger thereof, still the admission of the testimony complained of was harmless, for the reason that other witnesses, without objection, testified to the same or similar facts. Warwick testified that he was caught on this screw and thrown over the shaft, but was not injured. C. L. Blunt, without objection, said: "I got caught on that same set screw once myself, some time during the season of 1908, about the middle of the season and before Barnes was hurt. I was putting in the belt that run the reel, and my shirt sleeve was caught and torn off." The witness Lightfoot gave testimony of a similar character, without objection. The admission of Warwick's testimony, under the circumstances, furnishes no ground for a reversal of the case.

Assignments of error not discussed have been considered with the conclusion reached that neither of them disclose reversible error and they are therefore overruled. The evidence was sufficient to establish the material allegations of the appellee's petition; that appellee was not guilty of contributory negligence, and had not assumed the risk of the danger to which he was exposed by appellant's negligence.

The judgment of the court below is affirmed.