SMITH v. QUEEN CITY LUMBER CO.

(Court of Civil Appeals of Texas. Texarkana. Nov. 16, 1911.)

1. APPEAL AND ERROR (§ 927*)—REVIEW—DIRECTED VERDICT.

On appeal from a judgment for defendant upon a directed verdict, testimony conflicting with that favorable to plaintiff and tending to support the defense will not be considered; the evidence being reviewed from the standpoint most favorable to plaintiff that the jury might have used.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3748; Dec. Dig. § 927.*]

2. MASTER AND SERVANT (§ 286*)—JURY QUESTION—NEGLIGENCE.

Evidence, in an employé's action for personal injuries by being caught by a set screw while going under a revolving shaft, held to make it a jury question whether defendant was negligent in failing to protect the set screw, and in not warning plaintiff of the danger in passing under it in its unprotected condition.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 286.*]

3. MASTER AND SERVANT (§ 289*)—INJURIES—JURY QUESTION — CONTRIBUTORY NEGLIGENCE.

Evidence, in an employé's action for personal injuries by being caught by an unprotected set screw while passing under a shaft to put on a belt, held to make it a jury question whether plaintiff acted as a reasonably pru-

dent person in attempting to pass under the shaft for such purpose.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 289.*]

4. MASTER AND SERVANT (§ 289*)—INJURIES—JURY QUESTION — CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF DANGER.

Evidence, in an employé's action for personal injuries by being caught by a set screw on a revolving shaft while passing under the shaft to put on a belt, held to make it a jury question whether plaintiff knew or should have known of the existence of the set screw, so that he assumed the risk therefrom.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 289.*]

Error to District Court, Bowie County; P. A. Turner, Judge.

Action by J. E. Smith against the Queen City Lumber Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

See, also, 129 S. W. 1145.

J. A. Hurley, Chas. S. Todd, and J. M. Williams, for plaintiff in error. Hart, Mahaffey & Thomas, for defendant in error.

WILLSON, C. J. Plaintiff in error was an employé of defendant in error as night watchman at its sawmill. As he passed under a shaft revolving at the rate of 70 or 80 revolutions to the minute, his clothing was caught by an unprotected set screw projecting therefrom, and, as a result, he was whirled around the shaft and severely injured. After the testimony had been heard at the trial of his suit against defendant in error for damages, the court on motion of defendant in error peremptorily instructed the jury to return a verdict in its favor. The appeal is from a judgment rendered in accordance with a verdict returned in obedience to such instructions, and the only question presented for review is the action of the court in so instructing the jury.

The testimony in the record as to the character of the mill machinery and the manner in which it was placed is very unsatisfactory. Portions of it were given with reference to a diagram, which, had it been made a part of the record, doubtless would have enabled us to be better satisfied than we are that we understand the circumstances under which plaintiff in error was injured as the parties and trial court understood same. It seems that a hopper was situated under the saw, for the purpose of catching the sawdust as it fell during the operation of the mill in the daytime, and that an endless chain operated by a shaft which revolved under the platform on which the saw was situated carried off the sawdust which fell into the hopper. All the sawdust did not fall from the saw into the hopper, however. Some of it fell to the sides thereof on the floor of the platform. It was a part of plaintiff in error's duty during the night to

remove from the mill the sawdust which during the day accumulated on the platform. Defendant in error furnished him a scoop and a wheelbarrow to use in removing such sawdust. It was, however, more difficult, and required more time, to remove it by means of the scoop and wheelbarrow than to shovel it into the hopper and remove it by operating the machinery provided to carry it off. Plaintiff in error began working for defendant in error on a Monday night in February, 1909. He was injured on the following Thursday night. While he was operating the machinery provided to carry off the sawdust, a belt slipped off the sawdust-conveyer wheel situated under the platform. In order to operate the sawdust-conveyer it was necessary to replace the belt. He endeavored to replace it and failed. By sounding the whistle of the engine he signaled other employés to come to the mill. Several came, among them being one Boyd, the filer. These employés also failed in an attempt to replace the belt. The employés who came in response to plaintiff in error's signal then left the mill, but before Boyd left he told plaintiff in error to let the belt alone until morning. Plaintiff in error replied, he testified, that he "needed the belt to get that sawdust," and that he thought he could put it back. Boyd replied to this, "All right," and walked off. It seems that the difficulty about replacing the belt was due to the fact, discovered by plaintiff in error while the other employés were at the mill to assist him in replacing it, that the sawdust-conveyer had become choked up. After said employés left, plaintiff in error cleaned out the conveyer and then undertook to replace the belt. To do this it was necessary that he should get to the shaft which operated the conveyer, and this could be reached only by going over or under the line shaft, which occupied a horizontal position under the platform 2⅓ or 3 feet from the ground. It was obviously dangerous to attempt to reach the conveyer shaft by going over the line shaft, because of cogwheels which operated just above it. Plaintiff in error, in a recumbent position, made necessary by the closeness of the line shaft to the ground, passed under same as it revolved, and after replacing the belt on the conveyer shaft was carefully—to avoid, he testified, getting in contact with cogwheels above the shaft—attempting to pass back under the line shaft, when his clothing was caught by a set screw thereon, resulting in the injury he sustained. The set screw had a three-fourth inch square head, and it projected from the line shaft about three-fourths of an inch. It was unprotected by boxing or otherwise. Plaintiff in error testified that he was employed as night watchman by one Houston, defendant in error's foreman in charge of the mill; that on the Monday night he commenced work Houston was at the mill and instructed him

"about what had to be done at the mill at night"; that when Houston reached the mill the machinery for operating the sawdust-conveyer was running, it having been started by the night watchman whose place he (plaintiff in error) had been employed to fill; that he did not know whether defendant in error permitted the mill to be operated at night or not; that he informed Houston that the retiring watchman had started the machinery, and after remarking to Houston, "I don't know whether you allow it or not," asked him "if it was all right to run the machinery to carry that dust out"; and that Houston replied that it was all right. Plaintiff in error further testified that the only light at the mill was a dimly burning lantern, and that he had never seen the set screw on the line shaft and did not know, and had not been advised, that it was there. He further testified that he was 27 years of age, and, before he went to work for defendant in error, had worked as a night watchman at another sawmill, and in other capacities at other sawmills, but had never before undertaken to operate, and had had no experience in operating, the machinery of such a mill; and that during about nine months he worked in a railroad company's machine shop, during part of which time he operated a turning lathe. He further testified: "I know that machinery is always dangerous, and you have got to guard against it; but anybody employed around about machinery had got to take chances." And he further testified that he knew it was dangerous to go as he did under the line shaft—not because he thought he might be injured by getting in contact with the shaft while it revolved, but because of the close proximity of the cogwheels immediately above it.

[1] Because, in passing upon the question presented by the assignments, the case should be viewed from the standpoint from which the jury might have reviewed it, we have not, in the statment made above, referred to testimony conflicting with that favorable to plaintiff in error's contention and tending to support defenses urged by defendant in error. So looking at it, the case may be said to have been about as follows: That plaintiff in error, inexperienced in the operation of such machinery and ignorant of the existence of the set screw, and therefore having no reason to anticipate danger from it, while exercising due care in returning in the only way he could return from a place necessary for him to go in order to start machinery defendant in error had provided for the purpose and authorized him to use in discharging his duty to remove the sawdust, was injured because of an unprotected set screw projecting from a revolving shaft it was necessary for him to pass under.

[2] It is clear to us that on such facts the jury might have found that a reasonably prudent person charged with the duty to provide

a reasonably safe place for his employé to work in and reasonably safe instrumentalities with which to do the work would have anticipated that the belt might slip off the conveyer shaft as it did, and that, as it could be replaced in no other way than by going under the line shaft to the conveyer shaft, if the belt should slip· off as it did, plaintiff in error would go under the shaft as he did, and that if he so went under the shaft his clothing might be caught as it was by the set screw projecting therefrom; and from such findings conclude that defendant in error was negligent in failing to have the set screw properly protected, and in failing to warn plaintiff in error of the danger to be anticipated from it in its unprotected condition if he attempted to pass under the line shaft for the purpose of replacing the belt if it should slip off the conveyer shaft.

[3, 4] We think the jury also might have found that a reasonably prudent person, under the circumstances, would have attempted as plaintiff in error did for the purpose he did to pass as he did under the line shaft; and might further have found that he did not know, and was not chargeable with knowledge, of the existence of the set screw, and therefore had not assumed the risk arising from its existence. Copper Co. v. Pierce, 136 Fed. 150, 69 C. C. A. 148; Oil Co. v. Thompson, 76 Tex. 235, 13 S. W. 60; Miller v. Oil Co., 41 S. W. 366; Oil Co v. Thurmond, 55 Tex. Civ. App. 499. 119 S. W. 130; 4 Thom. Neg. §§ 4022, 4023, 4024. 4124: 1 Labatt, Mast. & Serv. §§ 76, 77, and notes; Peck v. Peck, 99 Tex. 13, 87 S. W. 248; Smith v. Oil Co., 41 Tex. Civ. App. 267, 91 S. W. 384.

The judgment will be reversed, and the cause remanded for a new trial.