## DIAL v. WILKE.

### No. 5009.

Court of Civil Appeals of Texas. Amarillo.

March 27, 1939.

Rehearing Denied April 24, 1939.

Vaughn E. Wilson, of Lubbock, and Madison Rayburn, of McMinnville, Tenn., for appellant.

Price & Moss, of Post, for appellee.

FOLLEY, Justice.

This is an appeal from the judgment upon a directed verdict in favor of the appellee, Adolph Wilke, in a suit wherein the appellant, William Dial, sought damages for injuries received by him when his hand was caught between two cog wheels of a commercial cane crushing machine or syrup mill alleged to have been owned and operated by the appellee.

The cane crusher was located near the town of Southland, Texas. It was a steel stationary machine motored from a tractor by means of a belt. The tractor stood some ten feet north of the mill. The cane was fed into the mill from the south end, which was the front of the mill. It passed between two large steel rollers or crushers about five feet high where the cane juice was extracted by a crushing process, after which the cane stalks, then called "pomace," passed on out the north or rear side of the machine where they fell upon the ground. The belt from the tractor was attached to a pulley wheel on the east side of the mill. At the rear of the machine and on the west side thereof were two unhoused cog wheels extending above the level of the mill which transmitted the power by traction from the pulley wheel to the steel cylinders through which the cane passed. Immediately east of the mill some fifteen or twenty feet was a sheet metal building containing vats in which the juice from the cane was cooked into syrup. West and southwest of the mill were stacks of cane which had not been crushed at the time of the injury. One of these stacks, which was about six feet high, was within three or four feet of the rear of the mill, barely leaving room for one to walk between this stack and the mill.

On August 26, 1937 the appellant was employed to work at this mill. He began work about 6:30 P. M. That night, some three hours after he began working, while he was attempting to clear away the pomace

behind the mill, his hand was caught in the gears of the unhoused cog wheels which severed two fingers from his left hand.

The appellant alleged that he was wholly inexperienced in work around such a machine; that the gears of the cog wheels were usually and customarily housed and guarded by a metal hood; that such hood was the standard equipment which came with such machinery; that the machine in question was so equipped when first operated but that the appellee had removed such hood and negligently failed to replace the same prior to the injury of the appellant; that the cog wheels were wholly covered and obscured by the pomace collecting at the rear of the machine; that the unhoused condition of the gears was known to the appellee but was unknown to the appellant; that the appellee failed to warn the appellant of the defective and dangerous condition of the cog wheels, though such was his duty due to the inexperience of the appellant and the fact that such unhoused gears were completely hidden from view by the collected pomace; that due to the belt from the tractor being on the east side of the mill the appellant was compelled to work on the west side of the machine; that on account of the proximity of the stack of cane on the west side of the machine there was not sufficient room for appellant to use the long handled fork left there for his use in removing the pomace and he was therefore forced to use his hands in carrying out the directions of his employer; that the appellee had not furnished him with safe machinery and a safe place to work as was his duty to do; and that the appellee employed as many as three men in and around his plant and was subject to the terms of the Workmen's Compensation Insurance Law of the State of Texas, Vernon's Ann.Civ. St. art. 8306 et seq. Suffice it to say that the testimony of the appellant supported substantially the fact allegations just enumerated.

The appellee answered by general demurrer, general denial and specially denied that he employed as many as three men about such plant or that he was subject to the terms of the Workmen's Compensation Insurance Law of Texas. He affirmatively pleaded contributory negligence and assumed risk on the part of the appellant. He also alleged, but failed to prove, that the condition of the moving gears was openly exposed to the appellant. He further asserted that it was by reason of appellant's failure to use proper care and diligence that he was injured.

Although the testimony in the record is very indefinite as to the terms of employment between the appellee and the men who were working at the plant at the time of the injury, we think it was sufficient to present an issue of fact as to the number actually employed by the appellee at the mill. The evidence shows that other than the two sons of the appellee, who were present a portion of the time, Dave Draper, Jack Gendorf, Otto Claus, Jack Cantrell and the appellant were working at the mill on the day of the accident. Although the appellee denied that he hired the appellant or that he had anything to do with the operation of the mill, asserting that he owned the mill but had leased the same to his two sons, the appellant testified that it was the appellee who hired him in the afternoon preceding the injury. The appellant testified that one of the Wilke boys told him that afternoon that the appellee did the hiring around the plant. The appellant stated that upon seeing the appellee about employment about 4:00 o'clock that afternoon the appellee told him that he thought he lacked a man or two, that he could use the appellant that night, and for him to report back for work about 6:30 or 7:00 o'clock P. M. as some of the hands wanted to get off early. The appellee did acknowledge that he had hired many different men to work about the mill, admitted his presence about the mill on the day in question and stated that he sold some of the syrup on the afternoon in question. He further testified: "We never had regular hands. We hired just whoever came along." Under such circumstances we think the trial court was unauthorized to find as a matter of law that three or more men were not employed by the appellee at the time of the injury. Whether or not the appellee would have been deprived of his common law defenses would have depended upon the jury's finding on this issue. In the event it had been determined by the jury that three or more men were not so employed under such conditions as to deprive the appellee of his common law defenses, issues of fact would then have been presented as to contributory negligence and assumed risk on the part of the appellant which, under the facts of

this case, could only have been determined by the jury. If three or more men were so employed, the appellee, not having subscribed to the Workmen's Compensation Insurance Law, would have lost his common law defenses of contributory negligence and assumed risk. In any event, however, before the appellant would have been entitled to recover, it would have been incumbent upon him to prove that his injury arose from some negligent act of the appellee or some agent or servant of such employer. Sec. 1 of art. 8306, R.C.S. of 1925. Unless, therefore, there was some evidence of negligent conduct on the part of the appellee herein to which the appellant might attribute his injury, the action of the trial court in directing a verdict for the appellee was without error. It will then be decisive of the principal issue now before us to determine if there was sufficient evidence to raise an issue of fact as to the negligence of the appellee.

Under the record presented it is our opinion that the evidence was sufficient to raise such an issue of fact. Although the appellant was shown to have done some work in carrying cane up to the mill and attending the cooking vats in the years 1933 and 1935, which was prior to the time of his injury, the testimony is uncontradicted that this was the first occasion upon which he had worked at the machine. He had worked only three hours at the mill before his hand was crushed. Having begun work about 6:30 P. M., it would naturally be evident that his injuries occurred some time after dark. Although the testimony is not very clear on the point we think that a fair deduction from the evidence as a whole would warrant the conclusion that the only light afforded the appellant was that which may have been furnished by the stars. He testified that for a while after he began work he fed the cane to the crushers at the front of the machine; that then Dave Draper took his place feeding the machine and he began carrying cane from one of the cane piles to the cane table for Draper to feed into the machine; and that after he had piled up plenty of cane on the table he then went around to the rear of the mill to clear away the pomace when the accident occurred. Although he admitted that the appellee warned him to be careful in feeding the cane through the crushers and that if he got his hand caught in the crushers it might "cut his hand or arm to pieces", the appellant was positive in his testimony, which was uncontradicted by other evidence, that the appellee at no time warned him of the gears and cog wheels at the rear of the machine. His testimony was equally positive that such cogs were completely covered by pomace, that he did not know they were there and that he had never seen the cogs until his hand was crushed. The appellant further testified that about three days after the accident the appellee came to see him and in the presence of the appellant and appellant's mother stated that the accident was due to his (appellee's) own carelessness in leaving the steel housings off of the cogs; that he took them off and got them broken; and that when the mill was put back together he failed to have the housings repaired and replaced on the gears. This statement attributed to the appellee by the appellant was neither admitted nor denied by the appellee who testified as a witness in the case. As the record stood at the conclusion of the testimony when the court instructed a verdict for the appellee, there was positive evidence before the court to the effect that the unhoused cogs were completely obscured from view by the accumulated pomace; that the appellant could not and did not see the cogs; that the appellee failed to warn him that they were there or that they were unhoused; and that the appellant was unable to use the fork but was compelled to use his hands to remove the pomace.

In the case of Beaumont, S. L. & W. Ry. Co. v. Schmidt, 123 Tex. 580, 72 S.W. 2d 899, 902, wherein the servant was injured by protruding nails in a revolving shaft, which nails were used as a substitute for cotter keys and were not readily visible due to the rapidity of the revolutions of the shaft, Judge Smedley, speaking for the Commission of Appeals, said:

"While the general rule is that the master is under no duty to protect with guards moving parts of machinery, such rule is not applicable where there are special circumstances enhancing the danger. 29 Texas Jurisprudence, p. 227, and cases cited; note 36 A.L.R. p. 1477, and following. And see 18 R.C.L. pp. 591, 592, where the statement is made that the tendency in the late cases is to hold the employer negligent in failing to guard all dangerous appliances. The danger ordinarily present

in rapidly moving parts of machinery was certainly enhanced by the peculiar construction and operation of the clutch which has been described and by the presence of protruding nails.

\* \*. \* \* \* \*

"The nondelegable duty of warning an inexperienced servant of the dangers incident to his employment is also imposed upon the master. 29 Texas Jurisprudence, pp. 152, 159; 18 R.C.L. pp. 732–733. The inexperienced servant should be given full information. Missouri Pacific Ry. Co. v. Watts, 64 Tex. 568. While the master is under no obligation to caution experienced servants of dangers which are open and palpable (29 Tex.Juris. p. 159) it is his duty to warn even them of the dangers which are latent, abnormal, or unusual. G., H. & S. A. Ry. Co. v. Garrett, 73 Tex. ·262, 13 S.W. 62, 15 Am.St. Rep. 781; H. & T. C. Ry. Co. v. Malloy, 54 Tex.Civ.App. 490, 118 S.W. 721 (application for writ of error refused); Labatt's Master and Servant (2d Ed.) § 1146. When the danger is hidden or unusual, the warning should be commensurate with the risk and explicit. Philadelphia etc., Ry. Co. v. Marland (C.C.A.) 239 F. 1; Labatt's Master and Servant (2d Ed.) § 1160."

In the case of Turner v. Goldsboro Lumber Co., 119 N.C. 387, 26 S.E. 23, 25, an inexperienced employee was injured when he stepped into knives temporarily left without the protection of a hood which ordinarily covered them. The knives were also concealed from the view of the employee. As to the duty of the master to inform the servant of such hidden perils and latent defects, the Supreme Court of North Carolina said:

"There was testimony from which the jury might have drawn the inference that the knives were so concealed from the view of one called upon to work as plaintiff was as to constitute a hidden danger, of which he had received no caution or warning, and had no actual knowledge.

"Where the servant has equal knowledge with the master of the dangers incident to the work, if the servant has sufficient discretion to appreciate the peril, he takes the risk upon himself on continuing in the employment. 'Where there are latent defects or hazards incident to an occupation, of which the master knows or ought to know, it is his duty to warn the servant of them fully; and, failing to do so, he is liable for any injury which the latter may sustain in consequence of such neglect.'"

The case of Bennett v. Warren, 70 N.H. 564, 49 A. 105, 107, involved a fact situation very similar to that of the instant case. In that case an inexperienced workman was injured a few hours after being set to work at a planer. While attempting to remove with his hand the shavings which had accumulated under the planer his hand was cut off by knives on the inner side of the planer which were concealed from view by the tightly packed shavings. In speaking of the duty and liability of the master in such case, the court said: "Another question presented is whether any negligence was shown on the part of the defendant. The negligence complained of was the employment of defective machinery, and the failure to inform the servant, whom the master knew to be inexperienced, as to the danger of his work. There was evidence tending to show that the blower pipe that carried the shavings from the machine on which. the servant was set to work was defective, and that this was known to the master. The natural result of that defect was that the shavings, not being properly carried away, would after a time become packed in beneath the machine, and obstruct its operation and necessitate their removal. To remove them while the machine was in motion was dangerous. The plaintiff was wholly inexperienced, having never worked in a mill before, had no knowledge of machinery, and no experience in its operation. He so informed the superintendent when he applied for work in the stable or as a teamster. The knives of the planer were covered by the machine and by the shavings as they were packed into it, and were not readily seen. Here was evidence from which it might be fairly found that the master was bound to inform the servant of and warn him against this danger of his work, and that the failure to perform this duty was the cause of the injury."

In the case of Farmers' Cotton Oil Co. v. Barnes, Tex.Civ.App., 134 S.W. 369, 372, writ denied, the servant was caught by a set screw in a revolving shaft in a cotton oil mill at Cleburne, Texas. The set screw could not have been seen at night while such servant was at work. While the servant testified that during the time he worked for the master he knew there

were a large number of unguarded set screws in the mill, he further testified that he had not up to the time of his injury noticed, and did not know, that the particular set screw causing his injury, protruded. On the question as to whether or not the trial court was authorized to find as a matter of law that the servant knew, or by the use of reasonable diligence should have known, that the set screw protruded, the Court of Civil Appeals, in its opinion, said: "The court was not authorized to say under the evidence as a matter of law that the appellee actually knew that the set screw causing his injuries protruded or that such condition of the screw was obvious or that appellee in the discharge of the duties required of him must have known by the exercise of that circumspection which an ordinarily prudent man would have used in the particular work in which he was engaged of the hazard to which he was exposed by the negligence of appellant in permitting the set screw to protrude as the evidence shows it did. Whether the projection of the set screw was actually known to appellee before or at the time he was injured by it, or whether it was obvious, or whether in the performance of the work he was directed to do appellee must necessarily have known of such projection and the danger incident thereto, were all questions of fact for the jury."

See, also, Longview Cotton Oil Co. v. Thurmond, 55 Tex.Civ.App. 499, 119 S.W. 130, and Smith v. Queen City Lumber Co., Tex.Civ.App., 141 S.W. 309.

The appellee contends that the warning given the appellant in regard to the danger of the steel rollers was sufficient to warn the appellant of all dangers about the machine, including the unhoused cog wheels at the rear of the machine. In this connection it is not contended by the appellee that any special warning was given the appellant in regard to the particular danger to which his injury was due. His injury was not due to the steel crushers at the front of the machine about which he had been warned but to the cog wheels at the rear of the machine. As to what particularity is necessary in the master's instructions to the servant, in Labatt's Master and Servant (2d Ed.), para. 1160,

it is said: "In numerous cases the servant has been allowed to recover for the reason that the court felt itself unable to say, as a matter of law, that the master's culpability might not reasonably be inferred from evidence which indicated that the servant, although he had been warned in general terms as to the danger of the work, had received no special warning in regard to the particular danger to which the injury was due, or no explicit instruction as to the proper manner of avoiding it, and that, under the circumstances, the information which the master had thus failed to communicate was necessary to enable the servant to obtain an intelligent comprehension of the danger."

From what has been said it follows that it is our opinion the testimony was sufficient to raise an issue of fact for the jury to determine whether or not the appellee was negligent under the peculiar facts and circumstances of this case and the court erred in instructing a verdict for the appellee.

■ In view of another trial of this case we call attention to the fact that it is not competent for the appellant to plead the failure of the appellee to subscribe to the Workmen's Compensation Insurance Law until the appellee first injects into the case his defenses of contributory negligence, fellow servants' negligence or assumption of risk. Sonken-Galamba Corporation v. Hillman, Tex. Civ.App., 111 S.W.2d 853. The allegations of the appellant herein with reference to the failure of the appellee to so subscribe to the law were contained in appellant's original pleadings, at which time, we presume, he could not anticipate what defenses the appellee would present. Since the appellee presented the common law defenses the vice contained in appellant's pleading was thus removed, however, upon another trial such might not be the case. We think the better practice would be for the appellant to assert such non-compliance on the part of the appellee only after, and not until, the appellee himself has raised the issue by asserting his common law defenses.

The judgment is reversed and the cause remanded.